EARL C. LEDDEN, PLAINTIFF-APPELLANT, v. FRED C.
EHNES, DEFENDANT-RESPONDENT.

FRED C. EHNES, ASSIGNEE OF CAMDEN SAFE DEPOSIT
& TRUST CO., PLAINTIFF-RESPONDENT, v. EARL C.
LEDDEN AND MARY M. LEDDEN, DEFENDANTS-AP-
PELLANTS.

Argued October 8, 1956—Decided November 5, 1956.

502

*Mr. Edward W. Eichmann* argued the cause for the appellant.

*Mr. Louis B. LeDuc* argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal by Earl C. Ledden from adverse portions of a judgment of the Chancery Division of the Superior Court, certified by this court on its own motion pursuant to *R. R.* 1:10–1(*a*).

The pertinent facts are simple. In 1923 Ledden and his wife borrowed $2,500 from the Camden Safe Deposit & Trust Co. and gave in return their bond secured by a mortgage in similar amount on premises in Gloucester City. Along with the bond they executed a warrant of attorney for the confession of judgment in the event of default. In 1933 or 1934 Ledden and his wife separated, his wife remaining in the mortgaged premises while Ledden went to live in Philadelphia. Sometime later he returned to Gloucester City and lived there separate from his wife. After a default on the mortgage, a foreclosure proceeding was commenced in 1935 in which Ledden and his wife were named as defendants. A subpoena, under the practice then in vogue, was issued directed to Ledden and his wife and was officially returned by the sheriff with the following endorsement:

"Duly served October 7th A. D. 1935, on Earl C. Ledden, by leaving a true copy of the within writ with a member of his family above the age of 14 years, to wit: on Mary M. Ledden, his wife, and

on Mary M. Ledden, personally a true copy of the within writ at their dwelling or usual place of abode, 706 Powell Street, Gloucester City, Camden County, New Jersey."

Ledden did not appear in the foreclosure proceedings and a final decree was entered in December 1935, adjudging that there was due on the mortgage the sum of $2,619.05 plus costs and counsel fees and that the property be sold to satisfy the debt. At the sheriff's sale the Camden Safe Deposit & Trust Co. bought the property for $100 and this sale was later confirmed.

██ It is conceded that Ledden was not properly served. He did not actually live at the place where the subpoena was left and valid service could therefore not have been made upon him there by leaving the copy with his wife, *Sweeney v. Miner,* 88 *N. J. L.* 361 (*E. & A.* 1915). Ledden, however, admits that he had actual knowledge of the foreclosure sale at or about the time it took place. Based on the deficiency that existed after the foreclosure sale, a judgment for $2,820.01 was entered on the warrant for confession of judgment against Ledden and his wife in the former Supreme Court on April 18, 1936.

Sometime later the Camden Safe Deposit & Trust Co. assigned this judgment to the Federal Deposit Insurance Corp. which in turn, in settling the affairs of the Camden bank, sold it to Fred C. Ehnes.

Ledden apparently had no knowledge or notice of this judgment *in personam* until a levy was made pursuant to an execution issued by Ehnes on the judgment in August 1954, more than 18 years later. The property levied upon was a mortgage held by Ledden on his brother's house, an automobile belonging to Ledden, and a joint bank account in the names of Ledden and one Jennie C. Christian. The levy against the bank account was abandoned before the final hearing, and it having been determined below that the funds belonged exclusively to Jennie Christian, that portion of the judgment was not appealed from. The automobile was sold at public sale and bought by Ehnes for $10 and then resold by him for $325. The trial court on the

evidence held that the value of the car was $475 less $30 accumulated storage charges which were paid by Ehnes.

When Ledden learned of the deficiency judgment as a result of these levies he urged that it was void because he had never been served as a party in the foreclosure proceeding. Some difficulty was experienced at the trial level in getting the matter before the court. It was originally presented to the Law Division of the Superior Court in the form of an application by Ehnes in aid of execution and an application by Ledden to vacate the judgment. It should have been disposed of there, *R. R.* 4:41-2 & 3, but the matter was then transferred from the Law Division to the Chancery Division and Ledden was directed to file a complaint setting forth his claim. When this was done, a motion for summary judgment was made by Ehnes, but the determination of it was held until the final hearing of the case.

The trial judge in rendering his decision on the final hearing pointed out that Ledden was not contesting the validity of the foreclosure judgment and through counsel admitted that were he to try to attack that judgment that laches would be a defense sustained by the court. The trial judge held that:

"* * * if no attack can be effectively made on the foreclosure decree, [then] no attack can be made on any step which stems or follows as a result of the foreclosure decree. Without the foreclosure decree there could be no deficiency suit in the old Supreme Court. If the foreclosure decree could not be attacked then the deficiency suit in the old Supreme Court could not and cannot be attacked. We have to sustain that conclusion well recognized in law that there is a presumption of validity which attaches to all judgments regular on their face. * * * And since the sheriff's return is presumptive proof of the facts recited in it, this Court feels bound by the record."

The position of Ledden on this appeal is the same as that advanced before the trial court, that since he was not in fact made a party to the foreclosure because of the defective service, any proceedings to recover any deficiency resulting from the foreclosure sale are defective and improper by

reason of non-compliance with the statute which provides that:

"No action shall be instituted against any person answerable on the bond unless he has been made a party in the proceeding to foreclose the mortgage." *L.* 1932, *c.* 231, § 1, *p.* 509; *R. S.* 2:65–2, now *N. J. S.* 2A:50–2, except that the word "proceeding" is now "action."

The respondent Ehnes obviously seeks to avoid the setting aside of the deficiency judgment because the three months from the date of the sale of the mortgaged premises or the confirmation, within which "the action on the bond shall be commenced," *N. J. S.* 2A:50–2, *R. S.* 2:65–2, has long ago expired and he would now be left without remedy in that event. The respondent characterizes the argument of the appellant as "a novel approach" forced by the predicament in which Ledden finds himself. He says if Ledden was able to overcome the defense of laches and the estoppel raised against any attack by him on the validity of the foreclosure decree and sale, the setting aside of the foreclosure decree would entail a reinstatement of the mortgage, followed by new foreclosure proceedings which would probably leave the appellant worse off than he is at present. On the other hand, he says, if the appellant directed his attack against the deficiency judgment entered on the warrant for confession of judgment, he would have to face the fact that that judgment was regular on its face, and to impeach it he would have to go back and attack the validity of the foreclosure decree and sale with the same consequences that would follow an effective attack against the foreclosure decree, and because of this he has devised the only argument possible and that is to invoke the statute.

The conceded fact is that Ledden was not served with process in the foreclosure proceeding. He was therefore not a party to the foreclosure and any disability against questioning that judgment arises not by reason of his being considered as a party in fact but by taking away from Ledden the right to claim that what appears of record is not the fact. Primarily this is to protect the rights and equities of those third persons who have become involved

in good faith and as to whom it would be inequitable to permit a successful attack upon the foreclosure sale after all these years of knowledge by Ledden and inaction. Moreover, on this same basis, it also serves to protect the mortgagee and its assigns who have changed their position substantially in reliance upon the record.

But while laches and estoppel thus bar Ledden's ability to question the foreclosure and sale, no such disability exists as to the deficiency judgment. There is no evidence that Ledden had any knowledge of this judgment until apprised of it more than 18 years later by reason of the levies made under the executions and the case seems to have proceeded upon this premise. There is no reasonable basis, therefore, for applying these same defenses to the deficiency judgment. Thus, when Ehnes took his assignment of the deficiency judgment and the accompanying documents he had to abide by the case of the person from whom he bought, *Davis v. Austin,* 1 *Ves. Jr.* 247 (*Eng. Ch.* 1790), and it was subject to whatever defenses and equities that existed between the original parties, *Barrow v. Bispham,* 11 *N. J. L.* 110, 116 (*Sup. Ct.* 1829); *Traphagen v. Lyons,* 38 *N. J. Eq.* 613, 618 (*E. & A.* 1884); *Manowitz v. Kanov,* 107 *N. J. L.* 523, 526 (*E. & A.* 1930); *Henion v. Monahan,* 110 *N. J. Eq.* 361 (*E. & A.* 1932).

Furthermore, the fact that Ledden cannot now question the final decree on foreclosure, a circumstance he readily admits, does not change the fact that he was not a party to the foreclosure proceedings and in this regard the mortgagee and its privy, Ehnes, are bound by the proscription of the statute, *R. S.* 2:65–2; *N. J. S. 2A*:50–2, *supra.*

This statute was passed during the great depression and was deemed a means of affording to persons obligated on a bond a measure of self-protection, particularly with respect to the sale of the premises given as security, to lessen the impact of financial distress, *Lapp v. Belvedere,* 116 *N. J. L.* 563, 569 (*E. & A.* 1936). The history of the statute indicates that the bill as originally introduced,

Assembly Bill 118, February 1, 1932, provided merely that parties who had become obligated to pay a mortgage debt by virtue of an assumption and an agreement to pay, could not be held liable for any deficiency after foreclosure sale unless they were made parties to the foreclosure proceedings. The attempt was to assure adequate notice in order that such persons might protect their rights by making sure that sufficient credit at least was given for the market value of the propery sold. The statement attached to the bill says:

"The purpose of this act is to provide that any party who subsequently assumes and agrees to pay the principal debt shall not be suable on such assumption unless he is made a party to the original forcelosure proceedings."

But the law as finally passed broadened the scope of persons included in its coverage so that all persons "answerable on the bond" had to be made parties to the foreclosure proceedings to be made answerable for any deficiency.

This statute was attacked and its validity upheld in *Lapp v. Belvedere, supra,* 116 *N. J. L.* 563 (*E. & A.* 1936) where Mr. Justice Heher, speaking for a unanimous court, pointed out that:

"The evident legislative purpose was to afford to the person liable upon the bond, through notice of the proceedings instituted to foreclose the collateral mortgage, timely opportunity to invoke measures for self-protection, particularly in relation to the sale of the security, upon which deficiency liability depends. Manifestly, it was a measure deemed necessary in view of the almost complete paralysis of the real estate market consequent upon the current trade depression. * * * Statutes of this character are essentially procedural in character; they do not affect the substance of right or remedy." 116 *N. J. L.*, at *pages* 569–570.

In further discussing the purpose of the statute in *Montclair Savings Bank v. Sylvester,* 122 *N. J. Eq.* 518, at *pages* 524–526 (*E. & A.* 1937), Mr. Justice Heher again appropriately said:

"The evident design of the pertinent statutory provision adverted to (*Pamph. L.* 1932, *p.* 509; *Pamph. L.* 1933, *p.* 172) was to make the person 'answerable on the bond' a necessary party to the foreclosure proceedings, if the right of action for deficiency is to be reserved, so as to render the decree *res judicata* as to the *quantum*

of the debt, and thus to close the question to further litigation in the deficiency suit and thereby obviate the possibility, if not indeed the probability, of irreconcilable determinations of that issue, and to afford to the obligor, through notice of the foreclosure proceedings, timely opportunity to employ measures for self-protection, particularly in relation to the sale of the security, upon which deficiency liability depends."

Ledden, by reason of the conceded fact of lack of service in the foreclosure suit, not having been made a party in fact could not be proceeded against at law as if he had been, no matter how much he became estopped by subsequent events to question the effectiveness of the foreclosure decree. At the time he was proceeded against under the warrant for confession of judgment he had not been made a party to the foreclosure and the deficiency judgment so obtained against him by confession was invalid by statutory mandate and remained so throughout the years intervening then and now. The statute is positive in its terms and no amount of interpretation can read in anything other than a clear expression of a procedural mandate. Since Ledden had not "been made a party in the proceeding [action] to foreclose the mortgage" the statute says "no action shall be instituted." The action leading to the deficiency judgment was improper at the time it was taken and is now out of time. *L.* 1932, *c.* 231, *sec.* 1, *p.* 509; *R. S.* 2:65–2, *N. J. S.* 2A:50–2.

But it is claimed that no action need be started as a prerequisite to a recovery for a breach of the conditions of the bond where there is a warrant for the confession of judgment without suit set forth in the bond. The confession of judgment, however, is no substitute for the suit on the bond required by this statute, *R. S.* 2:65–2; *N. J. S.* 2A:50–2, *supra.* The courts of this State have long expressed aversion to the device of the entry of judgment on such warrants. As long ago as 1824 Chief Justice Kirkpatrick in *Diament v. Alderman,* 7 *N. J. L.* 197, 198 (*Sup. Ct.* 1824) was led to observe that:

"* * * judgments entered upon bonds and warrants of attorney should, upon proper application, be very readily and widely opened,

for the method in which they are entered is the loosest way of binding a man's property that ever was devised in any civilized country."

The latest expression of judicial distaste for this type of instrument is to be found in *Hickory Grill, Inc., v. Admiral Trading Corp.*, 14 *N. J. Super.* 1 (*App. Div.* 1951), where Mr. Justice Brennan, then in the Appellate Division of the Superior Court, held:

"Judgments such as this by bond and warrant of attorney, without institution of suit, derive all their efficacy from statutory law and strict compliance with statutory requirements is necessary. *Modern Security Co. of Philadelphia v. Fleming*, 6 *N. J. Misc.* 730 (*Sup. Ct.* 1928). If the affidavit upon which a confessed judgment is entered fails in any respect substantially to comply with the requirements of *R. S.* 2:27–275, the judgment, being entered against the prohibition of the statute, 'is, *prima facie*, wholly fraudulent, and the burden of rebutting and overcoming the inference of fraud lies upon the party who seeks to uphold the transaction.' *Warwick v. Petty*, 44 *N. J. L.* 542 (*Sup. Ct.* 1882). Relief from the judgment may be allowed not alone on the application of creditors of the defendant but 'at the instance even of the defendant.' *Fortune B. & L. Assn. v. Codomo*, 122 *N. J. L.* 565 (*Sup. Ct.* 1938). Our courts of law have always exercised an equitable jurisdiction over judgments entered by warrants of attorney, *Barrow v. Bispham*, 11 *N. J. L.* 110 (*Sup. Ct.* 1828)."

In relying on the warrant for confession of judgment, Ehnes, and his assignor, must be deemed to have assumed all of the hazards incident to this form of "binding a man's property."

The portions of the judgment appealed from are accordingly reversed and the matter remanded for the entry of a judgment in favor of Earl C. Ledden setting aside the levies heretofore made by the respondent Ehnes and ordering him to pay Ledden the market value of the automobile sold by Ehnes with interest from the date of the sheriff's sale, but with appropriate credit to Ehnes and storage paid by him.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, BURLING and JACOBS—4.

*For affirmance*—Justice WACHENFELD—1.