87 N.J. Super. 430 (1965)
209 A.2d 662
WALTER S. HEINZER, PLAINTIFF-APPELLANT,
v.
SUMMIT FEDERAL SAVINGS & LOAN ASSOCIATION, ETC., ET AL., DEFENDANTS, AND WILLIAM S. GRAMBOR AND JEAN GRAMBOR, HIS WIFE, DEFENDANTS-RESPONDENTS AND THIRD-PARTY PLAINTIFFS,
v.
ERNEST L. HONEYWELL, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1965.
Decided May 3, 1965.
*431 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Philip Lindeman, II, argued the cause for appellant (Messrs. Hellring, Lindeman & Landau, attorneys; Mr. Norman Bruck and Mr. Michael L. Allen, on the brief).
Mr. John P. Walsh argued the cause for respondents (Messrs. Herrigel, Bolan & Herrigel, attorneys).
*432 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff second mortgagee appeals from a Chancery Division summary judgment in favor of defendants Grambor in an action brought to set aside a judgment foreclosing the first mortgage, the ensuing foreclosure sale and subsequent conveyances.
The following factual background is derived from the pleadings, affidavits and plaintiff's deposition. Plaintiff is the owner of a restaurant known as Wally's Tavern in Watchung, N.J. His wife Estelle worked there, as did his son-in-law Hiram L. Walls, who was employed as a chef until the close of 1961. In August 1960 plaintiff loaned Walls $7,588.14 so that he might purchase a home. A few months later Walls and his wife gave plaintiff and his wife a second mortgage on their newly purchased dwelling as security for the loan. This mortgage was duly recorded. However, there was in existence at the time a properly recorded first mortgage which the Wallses had previously given to the Summit Federal Savings & Loan Association (Summit).
The Wallses fell behind in their payments on the first mortgage, with the result that Summit instituted a foreclosure action on September 8, 1961, naming as defendants the owners, plaintiff and his wife as second mortgagees, General Investment Corporation (General) and International Charge, Inc. On September 19, 1961 a special deputy sheriff served Mrs. Heinzer by personally handing her copies of the summons and complaint at Wally's Tavern. The deputy's return of service, insofar as it related to plaintiff, stated:
"September 19, 1961 I served copies of the within Summons and Complaint upon Walter S. Heinzer at his usual place of abode at c/o Wally's Tavern, Bonnie Burn Rd., Watchung, New Jersey, by leaving copies thereof with his wife a member of his family over the age of 14 years and informed her of the contents thereof."
According to plaintiff, his wife told him of the service the same day, and that she had called their then attorney, who instructed her to forward the papers to him and he would *433 take care of the matter. This was done within a day or two. Plaintiff admitted that his wife had shown him a copy of the summons and complaint; that he had looked at "just the front of it where it said that it was, I believe, a sheriff's sale and we were  it was made out to Hiram Walls and his wife and ourselves as being the second mortgagor." He saw that he had been named defendant in the action. Plaintiff stated, "I * * * figured it was for the attorney to take care of."
According to plaintiff, he inquired of his attorney as to the status of the foreclosure action and was informed that he had called Summit and been told by an officer that Walls had promised to make a payment on the mortgage, and Summit was not going to take any action for the time being but would notify the attorney when and if it did. A month later plaintiff made further inquiry of his attorney, who told him he had heard nothing further about the matter. Plaintiff in his deposition stated that he had followed up the matter by calling Summit himself, and "they told me the same thing that they had told [his attorney]." He did not know the name of the person with whom he talked.
The only defendant who answered the foreclosure action was General. As a result, Summit moved for entry of default as to the remaining defendants pursuant to R.R. 4:56. Default was entered on January 25, 1962. Thereafter, final judgment by default was entered February 5, 1962, awarding Summit $16,095.22 and directing the sheriff to sell the property.
Prior to the holding of the foreclosure sale on April 18, 1962, Summit assigned its default judgment to defendant General, presumably in consideration of the balance due on its mortgage. General was the successful bidder at the sale, buying in the property for $100. It is not contended that the foreclosure sale was not regular in all respects, including proper notice by public advertisement. See N.J.S. 2A:61-1 et seq.; R.R. 4:83-2. Plaintiff admitted on deposition that he had learned of the sheriff's sale the same week, from a notice in a local newspaper and from speaking to a local *434 realtor. There were no objections filed to the confirmation of the sale, R.R. 4:83-5.
The sheriff's deed conveying the mortgaged premises to General was properly recorded on May 7, 1962. Thereafter, in July 1962, General entered into a contract to sell the property to defendants Grambor. Their attorney obtained a title search and an abstract of the foreclosure action. In his affidavit he stated that his review of the search and the abstract indicated that the title to the property was clear and the foreclosure proceedings regular. Accordingly, the Grambors proceeded to a closing, and on October 17, 1962 General executed and delivered its deed to them, the deed being duly recorded the next day.
Plaintiff was unable to fix the date when he first consulted his present counsel (not the attorney to whom the foreclosure papers had been forwarded and of whom plaintiff had made inquiry regarding the progress of the action). It would appear that he did so after the Grambors acquired title. It was not until November 21, 1962 that his counsel filed a complaint in the Chancery Division asking that the default judgment in foreclosure, the sheriff's sale and the subsequent conveyances be set aside because plaintiff had not been properly served with process and therefore his rights as a second mortgagee could not effectively be foreclosed. On February 15, 1963 the complaint was amended to make the Grambors parties defendant. They filed an answer setting up, among other defenses, laches, estoppel and unclean hands, and that they were bona fide purchasers for value. In the pretrial order plaintiff conceded that the Grambors were "bona fide purchasers for value without knowledge of any improper service of process in the foreclosure action."
The Grambors then moved for summary judgment in their favor. Judge Mintz, after hearing argument on the motion and considering the pleadings, the affidavit of the Grambors' attorney, the concession made in the pretrial order, and plaintiff's deposition, held that plaintiff was clearly guilty of inaction, and that the doctrines of laches and estoppel applied. *435 He considered the equitable maxim, "Equity aids the vigilant," as controlling. He found that plaintiff had slept on his rights, to the obvious prejudice of the subsequent transferees; he had not exercised diligence in asserting his rights, and his delay had been unreasonable.
We are in complete agreement with the conclusions reached by Judge Mintz, and this in light of the facts we have detailed. Plaintiff asserts that his interest as second mortgagee could not be defeated by Summit's mortgage foreclosure action because he had not been properly served with process under R.R. 4:4-4(a) since, concededly, Wally's Tavern was not his "dwelling house or usual place of abode." He contends that the Chancery Division was therefore without jurisdiction and its judgment void. Plaintiff relies, in the main, on Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 492 (1952), and Ammond v. Lafayette, 63 N.J. Super. 86 (App. Div. 1960). We find neither case factually apposite.
The Burlington-Bristol Bridge case was a proceeding brought by the Governor for rescission of the purchase by the Burlington County Bridge Commission of two bridges, on the ground that the transaction contravened sound public policy. One of the stockholders, a Delaware corporation, was never served with process in New Jersey. Instead, service was attempted to be made upon it by registered mail addressed to its New York office and by service there upon its president. It also appeared that the summons mistakenly limited defendant to answer within 20 days, and there was no affidavit of inquiry, affidavit showing publication, or court order providing for substituted service. Defendant corporation did not voluntarily appear and consent to the jurisdiction of our court but rather, both by answer and appropriate motion, sought to have the action dismissed as against it on the grounds of lack of jurisdiction over it, insufficiency of process and insufficiency of service. The Supreme Court, speaking through the late Chief Justice Vanderbilt, held that jurisdiction had never been acquired over the person or property of the company because of plaintiffs' failure to effect proper service, citing, *436 among other cases, Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), for the familiar principle that there can be no relief in personam against a defendant who has neither been served within the State nor consented to its jurisdiction. It may immediately be observed that Summit's foreclosure action was a proceeding in rem. That aside, the facts here are completely different from those in the cited case.
Ammond v. Lafayette was an action to recover monies alleged to have been improperly retained by defendant. The deputy sheriff served one Helen Schaefer at defendant's residence. Defendant moved to set aside the service as improperly made under R.R. 4:4-4(a). The motion was supported by Mrs. Schaefer's affidavit denying that she was a member of the family, an employee of defendant, or a resident in his home. In her testimony she repeated these assertions, but admitted she may have told the deputy that she was employed by defendant as his housekeeper. She also testified she had delivered the process to defendant later the same day. The trial judge denied the motion. He noted a conflict between the version given by plaintiff's attorney of what Mrs. Schaefer had told him, and her affidavit and testimony. The judge said he would give her the benefit of the doubt and went on to hold that since defendant had notice of the suit he should submit to the jurisdiction and have the case heard on the merits.
On appeal this court held that any statement Mrs. Schaefer might have made to plaintiff's attorney or the deputy sheriff in defendant's absence, without proof of her authority to speak in defendant's behalf, could not be binding upon him. The only competent evidence in the case having any probative effect negated the idea that Mrs. Schaefer was either in defendant's employ or lived in his home. We concluded that the trial court was in error in reasoning that although the service of process was not in compliance with the rules, the mischief was corrected if defendant had subsequently learned of the pendency of the action and had suffered no prejudice in the interim. Citing the Burlington-Bristol Bridge case, *437 we held that the requirements of the rules with respect to the service of process went to the jurisdiction of the court and had to be strictly complied with. Accordingly, we set the service aside. Here, again, there was an in personam action, and the factual picture was radically different from the one before us.
The situation in Ledden v. Ehnes, 22 N.J. 501 (1956), is much closer to the present case. Ledden and his wife had borrowed $2,500 from a bank and, in return, given it their bond, secured by a mortgage on certain premises owned by them. The bond was accompanied by a warrant of attorney for confession of judgment in the event of default. The Leddens separated some ten years later; they later defaulted on the mortgage and the bank instituted foreclosure proceedings in 1935, naming Ledden and his wife as defendants. A subpoena, directed to the Leddens, was officially returned by the sheriff bearing an endorsement that he had served Ledden by leaving a true copy with a member of his family above the age of 14, namely, his wife, and also serving her personally, at their dwelling or usual place of abode. Ledden did not appear in the foreclosure proceedings, a final decree was entered, and the sheriff held a foreclosure sale at which the bank bought in the property for $100. The sale was later confirmed. Because of the deficiency resulting from the sale, a judgment of $2,820.01 was entered against the Leddens in our former Supreme Court in April 1936, based on the warrant for confession. Sometime later the bank assigned this judgment to the Federal Deposit Insurance Corporation which, in turn, sold it to Ehnes.
It was conceded that Ledden was not properly served, for he did not actually live at the place where the subpoena was left and therefore valid service could not have been made upon him there by leaving a copy with his wife. Although Ledden admitted that he had actual knowledge of the foreclosure sale at or about the time it took place, it appears that he had no knowledge or notice of the deficiency judgment in personam *438 until a levy was made pursuant to execution issued by Ehnes on the judgment in August 1954, more than 18 years later.
Ledden instituted proceedings to have the deficiency judgment declared void because he had never been served in the foreclosure proceedings. In his decision following a full hearing, the Chancery Division judge observed that Ledden was not contesting the validity of the foreclosure judgment; he admitted that were he to try to attack that judgment, laches would be a defense which the court would have to sustain. That being so, the trial judge held that if no attack could effectively be made on the foreclosure decree, then none could be made on any step which stemmed from or followed as a result of the decree.
Ledden's position on appeal was the same as it had been before the trial court, namely, that since he had not in fact been made a party to the foreclosure because of defective service, any proceedings to recover a resulting deficiency were defective and improper by reason of noncompliance with N.J.S. 2A:50-2 (successor to R.S. 2:65-2): "No action shall be instituted against any person answerable on the bond unless he has been made a party in the action to foreclose the mortgage." The late Chief Justice Vanderbilt said:
"The conceded fact is that Ledden was not served with process in the foreclosure proceeding. He was therefore not a party to the foreclosure and any disability against questioning that judgment arises not by reason of his being considered as a party in fact but by taking away from Ledden the right to claim that what appears of record is not the fact. Primarily this is to protect the rights and equities of those third persons who have become involved in good faith and as to whom it would be inequitable to permit a successful attack upon the foreclosure sale after all these years of knowledge by Ledden and inaction. Moreover, on this same basis, it also serves to protect the mortgagee and its assigns who have changed their position substantially in reliance upon the record." (22 N.J., at pages 506-507)
Although plaintiff on this appeal characterizes the quoted material as dictum, nonetheless it formed an important link in the reasoning of the court, for the Chief Justice went on to say that while laches and estoppel would bar Ledden's *439 ability to question the foreclosure and the sale, no such disability existed as to the deficiency judgment, for there was no evidence that Ledden had any knowledge of that judgment until he learned of it more than 18 years later by reason of the levies made under the execution. There was therefore no reasonable basis for applying the same defenses to the deficiency judgment. Thus, when Ehnes took his assignment of the deficiency judgment and its accompanying documents "he had to abide by the case of the person from whom he bought, * * * and it was subject to whatever defenses and equities that existed between the original parties * * *." Although Ledden admittedly could not question the final decree in foreclosure, that did not change the fact that he was not a party to the foreclosure proceedings and, in this regard, the mortgagee and its privy (Ehnes) were bound by the proscription of the statute, N.J.S. 2A:50-2.
We adopt the quoted language of the late Chief Justice in Ledden. Plaintiff was not a party to Summit's foreclosure because he had not been properly served. However, he clearly had notice of the proceedings and of the fact that the foreclosure sale had been held. Any disability against his questioning the foreclosure judgment arises "not by reason of his being considered as a party in fact but by taking away from [him] the right to claim that what appears of record is not the fact." The Grambors, bona fide purchasers for value without notice, became involved in good faith. As to them, it would be inequitable to permit a successful attack upon the foreclosure proceeding and its sequelae when plaintiff stood by without doing anything for some 14 months after knowing that the complaint and summons in foreclosure had been left with his wife, and almost 7 months after learning of the sheriff's sale in foreclosure.
In passing, we observe that aside from laches and estoppel, which we hold to be fully applicable here, plaintiff's lien was subject to be cut off by strict foreclosure. Cf. Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403 (E. & A. 1938).
The judgment is affirmed.