289 N.J. Super. 95 (1996)
672 A.2d 1281
ROGAN EQUITIES, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CELESTE SANTINI, UNMARRIED, THOMAS SANTINI, UNMARRIED, AND TRUST FOR THOMAS A. SANTINI, UNDER WILL OF CELESTE SANTINI, DECEASED, AND CELESTE M. SNIPES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1995.
Decided March 28, 1996.
*97 Before Judges STERN, WALLACE, and NEWMAN.
Patrick J. Spina argued the cause for appellants (Andora, Palmisano & Geahey, attorneys; John F. Geahey, Jr., of counsel; Mr. Spina, on the brief).
*98 Joel Ackerman argued the cause for respondent Rogan Equities, Inc. (Zucker, Goldberg, Becker & Ackerman, attorneys; Mr. Ackerman, on the brief).
Stephen W. Gruhin argued the cause for respondent Peter Cocoziello (Gruhin & Gruhin, attorneys; Mr. Gruhin and Elitza M. Meyer, on the brief).
The opinion of the court was delivered by NEWMAN, J.A.D.
Defendants appeal from the Chancery Division's December 13, 1994 order denying their motion to vacate the judgment of foreclosure entered in favor of plaintiff Rogan Equities, Inc. that confirmed title in respondent Peter Cocoziello (purchaser at the foreclosure sale). We affirm.
The facts are as follows. Celeste Santini (Santini), her daughter Celeste M. Santini-Snipes (Santini-Snipes), and Santini-Snipes' husband Paul Snipes owned property in Hopatcong, New Jersey (the Hopatcong property) upon which a first mortgage was held by the Irving Savings & Loan Association (Irving S & L).
On November 7, 1985, Rogan Equities loaned $305,000 to Selections of Celeste, Wayne, Inc. (Selections of Celeste), a New Jersey corporation owned by Santini-Snipes. As security for the loan, plaintiff received a second mortgage on the Hopatcong property. As further security for the loan, plaintiff was given a first mortgage on two tracts of property in Totowa, New Jersey (the Totowa properties) owned exclusively by Santini.
In 1987, Irving S & L commenced a foreclosure action on the Hopatcong property. In December 1988, plaintiff purchased the Hopatcong property at the foreclosure sale by paying to Irving S & L $95,000, the amount owed to Irving S & L by Santini, Santini-Snipes, and Paul Snipes. According to defendants, plaintiff was able to pay only $95,000 because any other bidder would have had to assume the second mortgage to plaintiff and so bid at least $400,000 ($95,000 plus $305,000). Defendants maintain that *99 the property was worth about $525,000 at the time and that therefore the obligation to plaintiff (originally $305,000) was more than satisfied by the $430,000 difference between $95,000 and $525,000. Plaintiff claims that after purchasing the Hopatcong property for $95,000, it spent an additional $193,000 on the property before selling it for $233,000, and therefore Selections of Celeste's obligation to plaintiff was not extinguished. The court did not consider the obligation to plaintiff to be extinguished, but credited $23,000 against the debt.
On May 1, 1989, plaintiff, asserting that Selections of Celeste had defaulted on its loan, instituted the present action to foreclose on the Totowa properties, naming as defendants Santini, then the sole owner of the properties, and her son Thomas Santini (Thomas), who was a tenant of one of the Totowa properties. In her answer, Santini pled, among other things, that plaintiff had obtained full satisfaction of Selections of Celeste's debt by purchasing the Hopatcong property for $95,000 at a time when it was valued at approximately $500,000. On November 30, 1990, Chancery Judge Amos Saunders ordered that Santini's answer be stricken, that a default be entered as though no answer had been filed, and that the matter be referred to the Superior Court's Foreclosure Unit for entry of final judgment. Thomas was not mentioned in the order entered, apparently because he was not the owner of the properties.
On March 12, 1991, before final judgment of foreclosure could be entered, Santini died. By her will, Santini devised 50% of all her property to her daughter, Santini-Snipes, and 50% in trust for the benefit of her son Thomas during his lifetime and then upon his death to "the child or children of [Thomas] then living". Thus, Santini-Snipes became 50% owner of the Totowa properties while the Trust became owner of the other 50%. Santini-Snipes was named as the trustee of the Trust with no apparent restriction on her ability to sell the trust property.
On November 22, 1991, because final judgment had not yet been entered and a final judgment cannot be entered against a decedent, *100 see R. 4:34-1(b) and R. 4:47, plaintiff filed an amendment to the foreclosure complaint (first amendment to the complaint) adding "Trust for Thomas A. Santini" as a defendant. Plaintiff did not also add Santini-Snipes as a defendant because she had filed for bankruptcy in federal court, automatically staying all proceedings against her outside the bankruptcy proceeding. 11 U.S.C.A. § 362. The amendment also did not add the trust remaindermen, Raymond Santini, Lisa Santini Fox, and Dana Santini (Thomas's children), as defendants. On January 29, 1992, plaintiff served a summons, the complaint, and the first amendment to the complaint on Santini-Snipes in her capacity as trustee of the Trust. The trust remaindermen were not served.
In response to the complaint and first amendment to the complaint, Santini-Snipes, although not yet a named defendant, retained the services of the law firm of Cohn & Cohn to file an answer. On February 14, 1992, Cohn & Cohn filed an answer to the first amendment to the complaint which purported to be on behalf of defendants Celeste Santini, Thomas Santini, and the Trust, but not mentioning Celeste Santini-Snipes. In a certification accompanying the answer pursuant to R. 4:5-1(b)(2), Walter Cohn of Cohn & Cohn certified that
This party knows at this time of no other parties who should be joined in this action.... If this party learns at a later date of any other party who should be joined in this action, this party shall file with the court and serve upon all counsel appearing in this action an amended certification so stating.
The certification also stated that "there is also a bankruptcy proceeding pending filed by defendants," referring to Santini-Snipes' bankruptcy proceeding. Walter Cohn later testified at a hearing before Judge Saunders that he filed the answer on behalf of "[a]ll the defendants," who he thought were Santini-Snipes individually, the Trust, and Thomas. Mr. Cohn thought that the "Celeste Santini" named in the caption was Celeste Santini-Snipes, when in reality it referred to her deceased mother. He testified that Santini-Snipes told him that she was the person named in the caption.
*101 On March 16, 1992, a federal bankruptcy court vacated the automatic stay of proceedings against Santini-Snipes, but only up to entry of judgment in the foreclosure action. On April 2, 1992, plaintiff filed a second amendment to the complaint in the foreclosure action, adding Santini-Snipes as a defendant. Plaintiff also filed a motion to strike the previously filed answer and defenses and for summary judgment against defendants. Attached to the notice of motion served on Cohn & Cohn was a copy of the second amendment to the complaint. Plaintiff did not serve the second amended complaint directly on Santini-Snipes. Plaintiff, through its attorney at the time, Arnold Bornstein, relied upon the answer to the first amendment and Walter Cohn's certification in deciding not to serve the second amendment on Santini-Snipes. Mr. Bornstein read the answer's reference in its first paragraph to "Celeste Santini" as one of the defendants on whose behalf Cohn & Cohn were filing the answer as referring to Santini-Snipes because Cohn & Cohn purported to represent "Celeste Santini" and could not have represented the mother because she was deceased and had been represented by another attorney. Mr. Bornstein also relied upon Walter Cohn's certification, which declared that no other parties needed to be joined and that there was a bankruptcy proceeding pending filed by defendants, which could only have been referring to Santini-Snipes. Mr. Bornstein thus apparently believed that the answer to the first amendment to the complaint was filed partly on Santini-Snipes' behalf and constituted an appearance under R. 4:4-6, making service on her unnecessary.
On May 1, 1992, the Chancery Judge granted plaintiff's motion, ordering that defendants' answer be stricken, that default be entered as though no answer were filed, that judgment be entered against defendants, and that the matter be referred to the Foreclosure Unit for entry of final judgment.
On June 10, 1992, final judgment was entered. The final judgment stated that

*102 "it appearing that the defendants, Celeste Santini (now k/a Celeste Snipes), Thomas Santini and Trust for Thomas A. Santini under Will of Celeste Santini, Deceased, through their attorneys, filed a contesting Answer to the Complaint and Amended Complaint, ... it is further Ordered and Adjudged that the plaintiff duly recover against defendants, Celeste Santini (now k/a Celeste Snipes), Thomas Santini and Trust for Thomas A. Santini ... the possession of the [Totowa premises]...."
On January 26, 1994, the federal bankruptcy court vacated the automatic stay of proceedings against Santini-Snipes to allow the foreclosure action to proceed past the final judgment stage.
Plaintiff served notice of the sheriff's sale of the Totowa properties on Santini-Snipes, the trustee, but not on the trust remaindermen.
On May 10, 1994, respondent Peter Cocoziello (Cocoziello) purchased the Totowa properties at the sheriff's sale. On July 7, 1994, a writ of possession was entered commanding that Cocoziello be granted possession.
On July 26, 1994, in response to the writ, defendants obtained an order to show cause with temporary restraints. The order temporarily restrained the sheriff from enforcing the writ of possession pending a hearing and ordered plaintiff and Cocoziello to show cause why an order should not be entered vacating the final judgment of foreclosure, setting aside the sheriff's sale, restoring the answer of Santini-Snipes, Thomas Santini, and the Trust, and compelling plaintiff to amend its foreclosure complaint to add the trust remaindermen as defendants. In support of the application for an order to show cause, Dana Santini and Raymond Santini filed certifications that they did not learn about the sale until after it took place. Lisa Santini Fox did not file such a certification.
On October 31 and November 17, 1994, a hearing on the order to show cause was held. Defendants' attorney, John Geahey, who had replaced Cohn & Cohn, argued for the first time that the foreclosure judgment was void because Santini-Snipes had never been served as an individual defendant. The testimony of Walter Cohn was heard regarding the February 14, 1992 answer to the first amendment to the complaint.
*103 On December 13, 1994, Judge Saunders issued an order dissolving the temporary restraints and confirming fee simple title to the Totowa properties in Cocoziello. In this order, Judge Saunders found, among other things, the following: (1) that under N.J.S.A. 2A:50-15, which he concluded is constitutional, the sheriff's sale is neither void nor voidable as a result of plaintiff's failure to name the trust remaindermen as defendants and failure to serve them with the first amendment to the complaint because plaintiff served Santini-Snipes as trustee with the first amendment; (2) that the February 14, 1992 answer to the first amendment to the complaint was filed by Cohn & Cohn on behalf of Santini-Snipes as an individual, that Santini-Snipes believed that she was a named defendant at that time and that she had been served in her individual capacity with the first amendment, that the second amendment related back to the date Santini-Snipes' answer was filed, and that Santini-Snipes is deemed to have entered her appearance in the action through the answer; (3) that defendants' application (via the order to show cause) pursuant to R. 4:50-1 for relief from the May 1, 1992 order and the June 10, 1992 final judgment is time-barred under R. 4:50-2; (4) that Santini-Snipes is barred from setting up a lack of proper service based on the doctrines of equitable estoppel, laches, and res judicata; (5) that defendants have not shown any meritorious defense to the foreclosure action; (6) that notice of the sheriff's sale to Santini-Snipes as trustee was sufficient notice to the Trust and the trust remaindermen under R. 4:65-2; (7) that Cocoziello was a bona fide purchaser for value of the Totowa properties at the sheriff's sale, that the sheriff's deeds are valid, and that Cocoziello is the sole owner of the Totowa properties; and (8) that the sheriff is ordered to cause Cocoziello to have possession of the Totowa properties.
Defendants applied for a stay pending appeal of the December 13, 1994 order. On January 3, 1995, the Chancery Judge denied a stay and ordered, among other things, that defendants vacate the Totowa premises. On January 23, 1995, the occupants of the Totowa properties were evicted.
*104 Defendants appeal from both the December 13, 1994 order and from the provision of the January 3, 1995 order directing defendants to vacate the Totowa properties.
On appeal, defendants argue that the judgment and sheriff's sale are void because of plaintiff's failure to join the trust remaindermen. Further, defendants assert that N.J.S.A. 2A:50-15 and R. 4:26-1, insofar as they permit service on the trustee in lieu of service on the trust remaindermen, are unconstitutional under the Due Process Clause of both the Federal and State Constitutions[1]. Defendants contend, in the alternative, that the failure to provide them with notice of the sheriff's sale violated R. 4:65-2 and the Due Process Clause. Defendants also argue Santini-Snipes did not enter an appearance under R. 4:4-6 and was not barred by the doctrines of equitable estoppel and laches and R. 4:50-2 from challenging the judgment on the grounds that she was never properly served as an individual. In addition, defendants assert that the Chancery Judge erred in holding that Santini-Snipes was precluded on res judicata grounds from raising as a defense the issue of a setoff based on the value of the Hopatcong property. We address the issues raised.
Defendants argue that, while plaintiff's failure to join the trust remaindermen as defendants was authorized by N.J.S.A. 2A:50-15 and R. 4:26-1, this statute and rule are unconstitutional under the Due Process Clause, not distinguishing between the Due Process Clauses of the United States and New Jersey Constitutions.
In 1938, N.J.S.A. 2A:50-15 was enacted. It states that
It shall not be necessary in any action to foreclose any mortgage or mortgages to join as party or parties defendant any cestui que trust or cestuis que trustent of any interest, right, claim, or title, held in, on or to the mortgaged premises by a trustee or fiduciary for the benefit of such cestui que trust or cestuis que trustent, but any order or judgment entered therein shall be as binding and effective as though they had been made parties to such action.
*105 "Cestui que trust" is defined as "[t]he beneficiary of a trust." Black's Law Dictionary 229 (6th ed. 1990).
In 1943, in City of Newark v. Fidelity Union Trust Co., 137 N.J. Eq. 92, 94, 47 A.2d 320 (Ch. 1943), the court observed that
[i]t is doubted whether [N.J.S.A. 2A:50-15] is constitutional where the statute does not contain a provision making it reasonably probable that notice of these [tax foreclosure] proceedings will be communicated to the cestuis que trust and where the provisions of the statute, if followed, would operate to divest the cestuis que trust of their equitable right of redemption without an opportunity to be heard.
The court erroneously cited N.J.S.A. 2A:50-15, which governed mortgage foreclosure actions, when the case involved a tax foreclosure action governed by a parallel statute which also did not require the joinder of trust beneficiaries. The court did not hold the statute unconstitutional, but ordered that the cestui que trust be joined "notwithstanding [the statute]." 137 N.J. Eq. at 94, 47 A.2d 320.
In 1949, in Paradiso v. Mazejy, 3 N.J. 110, 117, 69 A.2d 15 (1949), our Supreme Court stated in dicta that "[w]hen the cestui que trust has an equitable title in the lands and a right of redemption, he must be made a party defendant to the [mortgage] foreclosure action if title is to be cleared." Apparently in response to Paradiso, the source rule to R. 4:26-1, R.R. 4:30-1, was amended in 1949 to require the joining of trust beneficiaries owning equitable title in lands that were the subject of a mortgage foreclosure action. Pressler, Current N.J. Court Rules, Comment to R. 4:26-1 (1996).
In 1950, the United States Supreme Court, in Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), addressed the issue of what type of notice was required to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. It held that the notice given must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. The Court concluded that a New York statute permitting a trust company petitioning for judicial *106 settlement of its accounts to provide notice to trust beneficiaries by publication in a newspaper was unconstitutional as to beneficiaries whose addresses were known to the trustee. 339 U.S. at 318-20, 70 S.Ct. at 659-60, 94 L.Ed. at 875-76.
In 1959, in Margaritell v. The Township of Caldwell, 58 N.J. Super. 251, 259, 156 A.2d 46 (Ch.Div. 1959), aff'd, 33 N.J. 453, 165 A.2d 298 (1960), the court held that a statute similar to N.J.S.A. 2A:50-15, but dealing with tax foreclosure actions rather than mortgage foreclosure actions (as in City of Newark, supra), that allowed for the joining of a trustee but not the cestuis que trustent was constitutional. The court also noted that N.J.S.A. 2A:50-15 had been reenacted in 1951 despite having been questioned in City of Newark, supra. 58 N.J. Super. at 260, 156 A.2d 46.
In 1969, the court rule that had been amended in 1949 in response to Paradiso, supra, to require joinder of trust beneficiaries in mortgage foreclosure actions was further amended. Pressler, Current N.J. Court Rules, Comment to R. 4:26-1 (1996). R. 4:26-1 was adopted as part of the 1969 revision of the rules essentially in its current form, which provides in relevant part:
A trustee of an express trust may be sued without joining the beneficiaries of the trust unless it shall affirmatively appear in the action that a conflict of interest exists between the trustee and the beneficiaries.
The adoption of this rule should be regarded as an effective nullification of the dicta in Paradiso. Pressler, supra, Comment to R. 4:26-1.
In commenting on N.J.S.A. 2A:50-15, Cunningham and Tischler have observed that,
[a]lthough New Jersey has a statute [(N.J.S.A. 2A:50-15)] providing that it is not necessary in the foreclosure of a mortgage to join as a party defendant any cestui que trust of any interest, right, claim, or title in the mortgaged premises held by a trustee, this statute is of doubtful constitutionality and should not be relied upon.
[30 New Jersey Practice, Law of Mortgages § 226, at 92 (Cunningham and Tischler) (1975).]
They cite City of Newark, supra, and Paradiso, supra, in support of their assertion, noting, however, that Margaritell, supra, upheld the constitutionality of the parallel tax foreclosure statute *107 permitting the non-joinder of trust beneficiaries. Id. at 92 n. 89. The commentators conclude that it was unclear whether Margaritell intended to distinguish between tax foreclosure actions and mortgage foreclosure actions. Id. at 93 n. 89. Regardless of whether Margaritell intended to make such a distinction, "it would seem that the constitutionality of N.J.S.A. 2A:50-15 is doubtful in light of Mullane," supra. Ibid.
Cunningham and Tischler go on to advise practitioners that "[n]or should the foreclosing mortgagee rely on [R. 4:26-1]." Id. at 92-93. They note that, "[i]f the trustee holds title for persons having future interests, all living persons interested in the property should be joined." Id. at 93. They also state that a plaintiff must make "due inquiry" to determine who the trust beneficiaries are, and should join them as "Unknown Owners (or Unknown Claimants) ... and their ... successors in right, title and interest" if their identity cannot be determined. Ibid. Finally, they caution that, "[a]lthough it has been questioned whether the equity rule requiring the joinder of cestuis que trustent applies where the trustee has legal title to the mortgaged property with a power of sale, it seems advisable to join them in such cases." Ibid.
The Chancery Judge upheld the constitutionality of N.J.S.A. 2A:50-15. While aware that Cunningham and Tischler sounded a warning as to the dubious constitutionality of the statute, Judge Saunders emphasized that a statute is presumptively constitutional and that Mullane, supra, alone did not overcome this presumption.
In challenging the constitutionality of N.J.S.A. 2A:50-15 and R. 4:26-1, defendants rely on the footnote in Cunningham and Tischler, supra, and Mullane, supra. In addition, they cite Oldham v. Noble, 117 Ind. App. 68, 66 N.E.2d 614 (1946), which held that the remaindermen, not just the life estate holder, had to be joined in a mortgage foreclosure action. Oldham did not involve a trust and thus is easily distinguishable from this case.
*108 N.J.S.A. 2A:50-15 and R. 4:26-1 are not unconstitutional based on the authority cited in the Cunningham and Tischler footnote which does not elaborate on why Mullane makes their constitutionality doubtful, especially when so many factors militate against such a holding. Indeed, the Mullane test is satisfied. The trustee in Mullane petitioned the court for a judicial settlement of its accounts and so was in an adversarial relationship to the trust beneficiaries whose joinder was at issue. Thus, the Court stated that "these beneficiaries do have a resident fiduciary [(the trustee)] as caretaker of their interest in this property. But it is their caretaker who in the accounting becomes their adversary. Their trustee is released from giving notice of jeopardy, and no one else is expected to do so." 339 U.S. at 316, 70 S.Ct. at 658, 94 L.Ed. at 874.
By contrast, the trustee, Santini-Snipes, had the same interest as the trust remaindermen in preventing the foreclosure of the Totowa properties of which she was half-owner and so retained the fiduciary duty to inform the remaindermen of the foreclosure action. Thus, notice to the trustee satisfied the requirements of due process under Mullane by being reasonably calculated to apprise the remaindermen of the pendency of the foreclosure action. Moreover, Mullane is distinguishable because it held unconstitutional only publication to beneficiaries of known addresses. Here, plaintiff did not know the identity or addresses of the trust remaindermen. Moreover, the trustee, Santini-Snipes, was given actual notice, not notice by publication which was at issue in Mullane. Finally, N.J.S.A. 2A:50-15 and R. 4:26-1 were both adopted after Mullane, indicating both the Legislature's and our Supreme Court's view that the statutory provisions were sufficient to pass constitutional muster.
City of Newark, supra, is of no precedential value because the court mistakenly referred to N.J.S.A. 2A:50-15 instead of the tax foreclosure statute, and Margaritell, supra, subsequently upheld the constitutionality of the parallel tax foreclosure statute that City of Newark should have cited. As for Paradiso, supra, it was, *109 as observed by Judge Pressler in her comment to R. 4:26-1, effectively overruled by the amendment of the court rule. We are, therefore, persuaded that both N.J.S.A. 2A:50-15 and R. 4:26-1 are constitutional and so hold. The trust remaindermen's due process rights were not violated by plaintiff's failure to join them in the foreclosure action.
Defendants also argue, similar to the contention just rejected, that plaintiff's failure to serve the trust remaindermen, as opposed to merely serving the trustee, with notice of the sheriff's sale violated the remaindermen's constitutional due process rights, as well as their right to notice pursuant to R. 4:65-2.
As of 1991, R. 4:65-2, governing notice of sheriff's sales of real estate, stated that
If, in any action, real ... property is authorized or ordered to be sold at public sale, the notice of the sale shall be posted in the office of the sheriff ... and also, in the case of real property, on the premises to be sold, but need not be posted in any other place. At least 10 days prior to the date set for sale, a notice of sale of real property shall be mailed ... by the party who has procured the execution or order for sale to every party who has appeared in the action or served a pleading and to the owner of record of the property as of the date of the commencement of the action whether or not he has appeared in the action. Failure to mail such notice shall not affect the title to the property.
See also N.J.S.A. 2A:50-14 (validating sales of real estate where cestuis que trustent were not made parties to foreclosure proceedings).
In New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 423-24, 587 A.2d 1265 (1991), our Supreme Court held that the Due Process Clause of the Fourteenth Amendment required a levying judgment creditor to provide actual notice, not merely constructive notice by publication as then authorized by R. 4:65-2, to other judgment creditors whose names and addresses are reasonably ascertainable. In coming to this conclusion, the Court applied the Mullane, supra, test of whether the notice was reasonably calculated to apprise interested parties of the pendency of the action and to afford them an opportunity to be heard. Markouski, supra, 123 N.J. at 417, 419, 587 A.2d 1265. Mullane's holding that constructive notice alone did not satisfy the requirements of *110 due process was viewed as critical when the interest holder was reasonably identifiable. Ibid.
In response to Markouski, R. 4:65-2 was amended, effective September 1, 1994, to require that notice of sale be mailed not only to every party who has appeared in the action and the owner of record of the property as of the commencement of the action, but also upon
(3) every other person having an ownership or lien interest that is to be divested by the sale and is recorded in the office of the Superior Court Clerk or the county recording officer, ... provided, however, that the name and address of the person in interest is reasonably ascertainable from the public record in which the interest is noted.
Effective July 3, 1995, R. 4:65-2 was again amended so that the September 1, 1994 amendment no longer applies "in mortgage foreclosure actions." The reason for the exception is that "foreclosure actions are preceded by full searches encompassing all recorded property interests and hence that all those having an interest are already party-defendants to the action." Pressler, Current N.J. Court Rules, Comment to R. 4:65-2 (1996).
Defendants argue that R. 4:65-2 and the Due Process Clause as interpreted in Markouski, supra, required that plaintiff mail notice of the sheriff's sale to the trust remaindermen, not just to Santini-Snipes as trustee. We disagree. The sale to Cocoziello took place on May 10, 1994, which was after Markouski but before either of the amendments to R. 4:65-2. Since the effective dates of both amendments were after the sale, the amendments simply do not apply. Markouski is distinguishable and the Mullane test is satisfied. The fact that notice by publication to individuals with reasonably ascertainable names and addresses was held unconstitutional in Markouski is of no significance to whether actual notice to a trustee is sufficient notice to trust remaindermen. First, while Markouski involved the due process rights of individuals who had no means of learning that their interests were at stake other than by reading the published notice, here the trustee received actual notice and had a fiduciary duty to inform the remaindermen of the sale. Second, Markouski held unconstitutional *111 notice by publication to individuals whose names and addresses were reasonably ascertainable. In this case, a search of the records would have revealed the name of the trustee but not the names of the remaindermen. Given the trustee's fiduciary duty to inform the trust remaindermen of the sale, actual notice to the trustee was reasonably calculated to apprise the remaindermen of the sale. See Mullane, supra. That being so, we hold that the notice of sale satisfied the requirements of R. 4:65-2 and the Due Process Clause as to the trust remaindermen.
Defendant Santini-Snipes also argues that plaintiff's failure to serve her as a defendant in her individual capacity renders the judgment and sale void as to her 50% interest in the Totowa properties and that she did not enter an "appearance" under R. 4:4-6. Because we affirm as to Santini-Snipes on the grounds of equitable estoppel, laches, R. 4:50-2, and res judicata, we need not address her argument under R. 4:4-6.
The Chancery Judge held that the doctrines of equitable estoppel and laches barred Santini-Snipes from asserting that a lack of proper service upon her as an individual warrants voiding the judgment and sale because she took no steps to protect her interests for over two years (from the May 1, 1992 order and June 10, 1992 final judgment to the October 31, 1994 order to show cause hearing) despite having actual knowledge of the foreclosure action by being served as trustee with the first amendment to the complaint on January 29, 1992.
Defendants' brief does not address the issues of equitable estoppel and laches. Before the Chancery Judge, however, Santini-Snipes' only explanation for the two-year delay in challenging the final judgment on the grounds that she was never properly served was that she was involved in bankruptcy proceedings during that period.
Plaintiff and Cocoziello cite the cases upon which the Chancery Judge relied in holding in their favor, Ledden v. Ehnes, 22 N.J. 501, 126 A.2d 633 (1956), and Heinzer v. Summit Fed. Sav. & *112 Loan Ass'n, 87 N.J. Super. 430, 209 A.2d 662 (App.Div. 1965). See also, 30 New Jersey Practice, Law of Mortgages § 244(F), at 134 (Cunningham and Tischler) (1975). In Heinzer, which relied on Ledden, a second mortgagee, seeking to set aside a judgment foreclosing the first mortgage and the ensuing foreclosure sale, was denied relief on grounds of laches and estoppel where he did nothing for fourteen months after learning that process had been improperly left with his wife and waited another seven months after learning of the sheriff's sale to bona fide purchasers for value. 87 N.J. Super. at 437-39, 209 A.2d 662. We concluded that it would be inequitable to the bona fide purchaser for value to set aside the sale after years of inaction by the second mortgagee. Id. at 438-39, 209 A.2d 662.
The principles of Heinzer were correctly applied to this case by Judge Saunders. Santini-Snipes was served as trustee with the first amendment to the complaint on January 29, 1992, and so had actual knowledge of the foreclosure action at least as early as that date. Moreover, the second amendment to the complaint adding Santini-Snipes as a defendant, attached to plaintiff's notice of motion for summary judgment, was served on April 2, 1992 on Cohn & Cohn, the law firm Santini-Snipes had retained to represent the Trust, her brother Thomas, and herself individually (apparently mistakenly believing that she had already been made a defendant). Despite Santini-Snipes' active participation in the proceedings, she did not move to set aside the final judgment, which referred to Santini-Snipes as a defendant in the action, until July 26, 1994, more than two years after the judgment and over two months after the properties were sold to Cocoziello. The fact that Santini-Snipes was preoccupied with her bankruptcy proceedings during this period is no excuse. The Chancery Division action proceeded in accordance with the bankruptcy court's March 16, 1992 and January 26, 1994 orders regarding the automatic stay. Moreover, Santini-Snipes could have sought relief from the stay from the bankruptcy court to allow her to challenge the foreclosure judgment. 11 U.S.C.A. § 362(d). Therefore, Santini-Snipes' explanation for her inaction is inadequate. Because Santini-Snipes *113 had actual knowledge of the action and participated in it both as trustee and as an individual and nevertheless delayed more than two years before claiming that the judgment purporting to bind her and the ensuing sale were void, we affirm the Chancery Judge's holding that Santini-Snipes is barred by equitable estoppel and laches from attacking the judgment and sale on the grounds that she was not properly served.
The Chancery Judge also held that Santini-Snipes' motion to set aside the judgment and sale under R. 4:50-1(d) and (f) was not made within a reasonable time under R. 4:50-2. The Chancery Judge's rationale was essentially the same as his holding based on laches and equitable estoppel. While Santini-Snipes does not specifically address this issue, she argues that the failure to serve her as an individual renders the judgment void regardless of how much time elapsed before the motion was made.
R. 4:50-2 states that "[t]he motion [(under R. 4:50-1)] shall be made within a reasonable time, and for reasons (a), (b) and (c) of R. 4:50-1 not more than one year after the judgment, order or proceeding was entered or taken." The decisions, however, are not entirely consistent on whether a motion under R. 4:50-1(d) (where the judgment or order is void) must be made within a reasonable time. In Garza v. Paone, 44 N.J. Super. 553, 557-59, 131 A.2d 32 (App.Div. 1957), a personal injury suit in which the defendant moved to vacate a default judgment on the grounds of improper service, we held that, while the judgment was void because of the improper service, the motion was not made within a reasonable time as required by the court rule because the defendant knew about the action prior to the judgment yet waited more than two years before moving to set it aside. There, we noted that the determination of whether such a motion was made within a reasonable time rested within the discretion of the trial court based on equitable principles. 44 N.J. Super. at 558, 131 A.2d 32.
In Berger v. Paterson Veterans Taxi Serv., 244 N.J. Super. 200, 204-06, 581 A.2d 1344 (App.Div. 1990), we departed from Garza, supra, by concluding that, where the service of process was so *114 defective that the default judgment was void, due process required that the motion to set aside the judgment be granted even though it was not made in a timely fashion. We held merely that a void default judgment must "ordinarily" be set aside, not that such a judgment must always be vacated. 244 N.J. Super. at 205, 581 A.2d 1344. We distinguished Last v. Audubon Park Associates, 227 N.J. Super. 602, 548 A.2d 236 (App.Div. 1988), certif. denied, 114 N.J. 491, 555 A.2d 613 (1989), which held that laches and equitable estoppel barred setting aside a foreclosure judgment where a mortgagee against whom a void foreclosure judgment had been entered delayed challenging the judgment for two years despite having knowledge of the judgment and of the subsequent purchase of the property. 244 N.J. Super. at 206, 581 A.2d 1344.
After Berger, in City of Newark v. (497) Block 1854, 244 N.J. Super. 402, 582 A.2d 1006 (App.Div. 1990), we held that due process did not require a tax foreclosure judgment to be vacated because of lack of notice to the landowner where the landowner waited over three years after learning of the action to raise the issue. We were satisfied that the landowner was estopped from raising the issue. 244 N.J. Super. at 408, 582 A.2d 1006. Similarly, in Rosa v. Araujo, 260 N.J. Super. 458, 616 A.2d 1328 (App.Div. 1992), certif. denied, 133 N.J. 434, 627 A.2d 1140 (1993), we refused to vacate a default judgment despite improper service of process where the defendant had actual knowledge of the lawsuit and turned the matter over to an attorney for representation. We held that the judgment was not void because the notice given was reasonably calculated to apprise defendant of the action and so did not violate due process. 260 N.J. Super. at 463, 616 A.2d 1328.
It is clear that in some circumstances a motion to vacate a void judgment can properly be denied as untimely. The facts here are more analogous to Last, supra, where the motion to vacate was denied, than they are to Berger, supra, in which it was granted. Unlike Berger, no default judgment was involved, and Santini-Snipes participated in the action, filing an answer through her attorneys. Similar to Last, the intervening rights of an *115 innocent third party, Cocoziello, are present. Because of the intervening rights of Cocoziello, and Santini-Snipes' delay of more than two years after learning of the foreclosure action, we affirm the Chancery Judge's denial of Santini-Snipes' motion under R. 4:50-1(d) and (f) on the grounds that it was not "made within a reasonable time" under R. 4:50-2.
The Chancery Judge also held that Santini-Snipes is "estopped by the Doctrine of Res Judicata, this Court having entered an Order for Summary Judgment against Decedent [(her mother)], her predecessor in the chain of title on November 30, 1990." While we need not reach this issue since we affirm on the grounds of equitable estoppel, laches, and R. 4:50-2, we choose to address it. The Chancery Judge did not clarify whether he was referring to the doctrine of claim preclusion or issue preclusion/collateral estoppel. However, his statements at the hearing on the order to show cause suggest that he was referring to both claim and issue preclusion. At one point, he stated that defendants could not raise the issue of the setoff based on the Hopatcong property because it should have been raised in the action to foreclose that property. This statement seems to have been based on a claim preclusion theory since it was bottomed on the notion that the setoff issue should have been raised in the Hopatcong action, not that the issue was actually decided on the merits in that action. Later, the Chancery Judge indicated that the res judicata holding was based on the fact that the setoff issue had been litigated on the merits in the present action by Santini (Santini-Snipes' mother), and so rejected by the November 30, 1990 judgment for plaintiff, and that the present defendants were bound by that judgment since they stepped into Santini's shoes; he thus seemed to be relying on an issue preclusion theory.
Defendants do not specifically discuss the res judicata issue in their brief. However, defendants argued before the Chancery Judge that, if the judgment was void, it must be vacated regardless of whether the setoff presented a meritorious defense; therefore, *116 they asserted, the court should consider the res judicata issue only after vacating the judgment.
We are satisfied that both claim preclusion based on the Hopatcong foreclosure action and issue preclusion based on the November 30, 1990 judgment apply to defendants' setoff defense. Santini-Snipes was a defendant in the Hopatcong action and should have sought in that action a hearing on the fair market value of the Hopatcong property. She is claim precluded from doing so here. Santini-Snipes and the Trust also stepped into the shoes of Santini and, since the November 30, 1990 judgment was based on the merits, including the setoff defense raised by Santini, they are issue precluded from re-litigating that issue.
Affirmed.
NOTES
[1] The Attorney General of New Jersey was given notice, pursuant to R. 2:5-1(h), of the constitutional challenge but decided not to participate in the appeal.