PATRICIA A. NEGROTTI, PLAINTIFF-RESPONDENT, v.
MATTEO PETER NEGROTTI,
DEFENDANT-APPELLANT.

Argued November 5, 1984—Decided February 13, 1985.

*Paul Rubin* argued the cause for appellant (*Pellettieri, Rabstein & Altman,* attorneys).

*Robin E. Echevarria* argued the cause for respondent (*Lewis, Siegel & Wood,* attorneys).

PER CURIAM.

In this matrimonial dispute the sole issue projected by defendant-husband's petition for certification, which we granted, 97 *N.J.* 619 (1984), is the following: when a trial court determines it will not follow a stipulation entered into by the parties as to the value of certain property for equitable distribution purposes, should not the court afford the parties a hearing on the value of the subject property before it announces its determination? We hold that such a hearing is required; and because defendant was deprived of the opportu-

nity to present proof as to the value of the property in question, we remand to the trial court for determination of that issue.

## I

It is important to note at the outset what this appeal is *not* about, to the end that we can confine our decision to what is really in dispute. Defendant does not question the authority of a trial court to override a stipulation in certain circumstances, nor do the parties focus on the issue of what standards should guide a trial court in determining whether the circumstances are such that a stipulation must be honored. That question, provocative as it is, has not been fully briefed and argued and can well await resolution in an appeal in which it is directly presented. The issue that is ripe for determination is: assuming, without deciding, that the trial court was on sound ground in going behind the stipulation, what procedure should it have followed?

## II

At an early stage of this lengthy trial the parties entered into a stipulation that the assets of Antique Silver Limited (ASL), a concern that was part of the disputants' silver business interest, would become the property of plaintiff-wife, by way of equitable distribution. It was further agreed that the ASL assets would carry a value of $49,065. Both parties acknowledged in open court that they understood and agreed to the stipulation. Defendant, in reliance on the stipulation, presented no evidence during the trial as to the value of the ASL silver, although there was testimony concerning other items of silver—some 8500 ounces in all (the parties had started out as collectors, learned the intricacies of the silver market, and ended up as full-time silver traders).

The issue concerning the effect of the stipulation arose when the trial court delivered its opinion at the conclusion of the trial. The trial court dismissed plaintiff's claim for divorce based on

extreme cruelty and granted defendant's counterclaim for divorce predicated on desertion. It awarded plaintiff alimony of $100. per week for one year to enable her to obtain employment. It also found that the assets subject to equitable distribution should be divided equally, and that their total value was $219,954.

In making that computation the court disregarded the parties' stipulation and valued the silver inventory held by ASL at $11,128 rather than $49,065, a difference of some $38,000. Defendant's attorney directed the court's attention to the stipulation, but the trial court decided that the silver inventory "ha[d] that value even though [a different value had been] stipulated by the parties." The Appellate Division affirmed, holding that a trial court may reject factual stipulations "upon finding they are wrong provided he makes specific findings rejecting the stipulation."

### III

Defendant asserts that by announcing the reevaluation of ASL's assets, contrary to the stipulation, at a time when further testimony was foreclosed, the court limited defendant's right to prove his case. We agree.

We have examined the record to determine the basis for the trial court's rejection of the stipulation. As we understand it—and again, without implying that the basis for not accepting the stipulation was sufficient—the court valued all of the silver by the same standard: the market value at the time of the decision. Confronted with the stipulation as to the silver assets of ASL, the court appears to have reasoned that inasmuch as the stipulation had been reached by use of some standard of evaluation different from that which was being applied to all the other silver, mechanical application of the stipulation would produce a double standard of valuing silver items in a single equitable distribution proceeding. The court reasoned that the

result would be a gross over-evaluation of ASL and therefore a windfall to the defendant.

Yet what the trial court may have ignored is the possibility that the silver items comprising ASL should in fact be valued by a different standard. This is exactly what the defendant contends—that many of the silver items held by ASL are true antiques or collectible silver, to be valued at a price different from that given scrap silver. Defendant's expert was prepared to testify as to the antique or collectible nature of the ASL items, but defendant never pursued this line of questioning because he was secure in the knowledge that their values were the subject of a stipulation. It may very well be true that the silver held by ASL is no more valuable than the rest of the silver owned by the parties, but we do not know that and will not know it until the parties litigate the issue. The opportunity for exploration of that issue was lost with the court's untimely rejection of the parties' stipulation.[1]

## IV

Our decision should in no way be taken as an invitation to litigants or trial courts to sidestep the binding nature of factual stipulations. Quite to the contrary, it is important for attorneys to have confidence in stipulations as a tool to avoid the expense, trouble, and delay of coming forward with proofs when certain otherwise-contestable facts are admitted. The basic thought is that generally litigants should be held to their stipulations and the consequences thereof. *See Jersey City v.*

---

[1] It is true that at the time the decision was rendered the trial court acknowledged the potential prejudice of disregarding the stipulation and therefore chose to allow the topic to be discussed at an already-scheduled "Form of the Judgment" hearing. Nevertheless, at that supplemental hearing, the court itself conducted almost all of the questioning, and the testimony was limited to two witnesses who had already been scheduled to appear for other purposes. Although these witnesses were somewhat helpful in determining the "true value" of the assets in question, defendant was nonetheless precluded from offering into evidence his own testimony and the testimony of his expert.

*Realty Transfer Co.,* 129 *N.J.Super.* 570, 573 (App.Div.1974), aff'd o.b., 67 *N.J.* 104 (1974). However, in the rare instances in which the circumstances—not delineated today—justify the court's rejection of the parties' stipulation, the party losing the benefit of the stipulation must still receive his day in court with respect to the stipulated issue. This requires that the litigant who is being prejudiced by the court's non-adherence to the stipulation be given the same opportunity to present his proofs as he would have received had the stipulation not been entered on the record.

We remand the cause to the trial court for a plenary hearing limited to the issue of the value of the assets of ASL. If, after hearing this testimony, the court determines that any of the assets of ASL is deserving of a different standard of valuation from all the other silver assets, then the equitable distribution should be adjusted accordingly to ensure that the total value of the parties' assets has been divided equally. We do not retain jurisdiction.

*For limited remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.