NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4643-14T3

NARSAN LINGALA,

 Plaintiff-Appellant,

v.

SAROJA ALKANTI, f/k/a
SAROJA LINGALA,

 Defendant-Respondent.
________________________________

 Submitted May 15, 2017 – Decided June 16, 2017

 Before Judges Haas and Geiger.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Middlesex
 County, Docket No. FM-12-2371-11.

 Keith, Winters & Wenning, LLC, attorneys for
 appellant (Brian D. Winters, on the briefs).

 Bhavini Tara Shah, attorney for respondent.

PER CURIAM

 Plaintiff Narsan Lingala appeals from a May 28, 2015 order

denying his post-judgment motion to set aside a matrimonial

settlement agreement ("MSA") entered into by the parties on July

10, 2012. We affirm.
 Plaintiff and defendant Saroja Alkanti, formerly known as

Saroja Lingala, were married on December 2, 1995. They had two

children, a son born in 1997 and a daughter born in 2003. Plaintiff

filed a complaint for divorce on May 9, 2011. Defendant filed an

answer and counterclaim. This heavily litigated divorce action

was the subject of numerous pretrial and post-judgment motions.

The pretrial motions included several discovery enforcement

motions filed by defendant to obtain financial information

regarding plaintiff's business and income. Both parties filed

post-judgment motions to enforce various provisions of the MSA.

 Prior to trial, the parties participated in a matrimonial

early settlement panel, R. 5:5-5, and economic mediation with a

private mediator, both of which were unsuccessful.

 The trial began on June 25, 2012, but the parties reached a

global settlement before the trial was completed. Plaintiff takes

issue with certain events that transpired during the trial after

the trial judge learned there was an outstanding warrant for the

arrest of plaintiff for violating a final restraining order entered

against him in Massachusetts.1 Plaintiff was placed under arrest

and removed from the courtroom for processing. Plaintiff then

1
 Notably, plaintiff was not a party to the Massachusetts
proceeding in which the final restraining order and arrest warrant
were issued.

 2 A-4643-14T3
returned to the courtroom handcuffed. The trial then continued

that afternoon.

 The trial was scheduled to recommence the next day at 10:00

a.m. Plaintiff was again brought into the courtroom in handcuffs.

Facing the prospect of a continued trial, the parties engaged in

lengthy settlement negotiations from approximately 10:00 a.m.

until late afternoon. Plaintiff remained handcuffed and was

restricted to the courtroom during the negotiations. He was

accompanied by his attorney and a friend who was present to help

him. After engaging in daylong settlement negotiations, the

parties reached a global settlement resolving all outstanding

issues.

 Later that same day, the trial judge conducted a thorough

hearing to determine whether the parties had entered into the

agreement knowingly and voluntarily, without force or duress, and

were satisfied that the agreement was fair and equitable to both

of them. Prior to having the exact terms of the settlement placed

on the record, the trial judge cautioned the parties to "listen

very carefully" to the terms of the agreement about to be recited,

because once agreed upon, the agreement would be final, and there

would be no renegotiating or changing the agreement. The trial

judge then conducted a thorough voir dire.

 3 A-4643-14T3
 Plaintiff testified that he heard and understood the terms

recited in court, which accurately reflected his understanding of

the agreement. He indicated that the agreement resolved all the

issues between him and his wife. He stated that no one forced or

threatened him to agree to any of the terms, and that he agreed

to the terms voluntarily. He testified that he was satisfied with

the services of his attorney throughout the proceedings. He stated

that he believed the agreement was fair and equitable to both

parties under all the circumstances. He further testified that

given his general economic circumstances, he would not be able to

maintain a lifestyle after the divorce that is similar to what he

enjoyed during the marriage. Nonetheless, he was still willing

to enter into the agreement. Defendant testified similarly, except

for indicating that she would be able to maintain a lifestyle

after the divorce that is similar to what she enjoyed during the

marriage.

 Based on their testimony, the trial judge found that: (1) the

parties understood the terms of the agreement; (2) the agreement

was entered into voluntarily, without coercion or duress; (3) the

parties were represented by able and extremely hardworking

counsel, with whom they are both satisfied; (4) the parties were

satisfied that the agreement was fair and equitable to both of

them; and (5) plaintiff had chosen to enter into the agreement

 4 A-4643-14T3
freely and voluntarily even though he felt that he would not be

able to maintain the marital standard of living after the divorce.

The trial judge granted a dual judgment of divorce and incorporated

the terms of the oral agreement into the final judgment of divorce.

 The terms of the settlement were also set forth in a seven-

page handwritten agreement that was prepared and signed by both

parties and their attorneys while in court. Two weeks later,

plaintiff executed a formal typed version of the MSA incorporating

the terms of the July 10, 2012 handwritten agreement with some

additional terms. By that point, plaintiff was no longer under

arrest or incarcerated.

 As part of the MSA, plaintiff agreed to pay child support of

$358 per week in accordance with the child support guidelines,

based upon imputed annual income of $162,500 and defendant's W-2

income of $47,000. The agreement further provided that for

purposes of funding secondary education, the minimum income to be

imputed to plaintiff is $150,000.

 Plaintiff is the sole owner of a closely held Subchapter S

Corporation, LMN Solutions, Inc. Plaintiff did not retain an

expert to value his business and testify at trial. The equitable

distribution negotiations took into account the valuation of his

business by defendant's expert, Michal H. Karu, CPA/CFF. In his

preliminary report, Karu opined that the "fair value" of

 5 A-4643-14T3
plaintiff's business was $214,000. Karu did not testify at the

trial because the parties reached a global settlement during

plaintiff's case. Under the terms of the settlement, plaintiff

retained full ownership of his business, free and clear of any

equitable distribution claim of defendant. Plaintiff waited until

2014 to retain an expert to appraise his business. His expert

valued the business at $50,000.

 Following their divorce, the parties engaged in extensive

post-judgment motion practice resulting in the following orders

that are pertinent to this appeal: (1) an October 26, 2012 order

denying plaintiff's motion to declare the MSA void, and to

recalculate child support and spousal support; (2) a December 21,

2012 order denying plaintiff's motion for reconsideration of the

October 26, 2012 order; (3) a February 11, 2013 consent order

enforcing certain provisions of the MSA; (4) an April 18, 2013

consent order imposing a qualified domestic relations order (QDRO)

on an investment account, and further ordering "that all other

provisions of the [MSA] shall remain in full force and effect;"

(5) an April 3, 2014 order denying plaintiff's motion to reduce

child support. The December 21, 2012 order stated that plaintiff's

motion for reconsideration was denied because he had "failed to

demonstrate a change of circumstances since the date of signing

the [MSA] sufficient to merit reconsideration."

 6 A-4643-14T3
 Thereafter, in October 2014, more than twenty-six months

after he entered into the MSA, plaintiff moved for fifteen

different forms of relief, including a "reevaluation" of his

"financial situation based on the new forensic accounting report

and, if appropriate, recalculating plaintiff's child support and

alimony obligations." Plaintiff requested a plenary hearing to

address the voluntariness and alleged unconscionablity of the MSA.

 Plaintiff contends that he did not enter into the MSA

voluntarily because it was the product of undue pressure and

duress. He claims that the undue pressure and duress resulted

from the following circumstances: (1) the trial judge's negative

attitude and hostility toward him; and (2) being handcuffed during

a portion of the trial and the negotiation of the MSA. Plaintiff

further contends that the MSA is unfair, inequitable, and

unconscionable because his income and the value of his business

were overstated.

 After hearing extended oral argument, the motion judge issued

a May 28, 2015 order and five-page statement of reasons denying

the aspects of plaintiff's motion which are the subject of this

appeal without prejudice, including his request for a plenary

hearing.

 Plaintiff raises the following arguments on appeal:

 7 A-4643-14T3
 POINT ONE

 SCOPE OF REVIEW.

 POINT TWO

 THE PARTIES' MATRIMONIAL SETTLEMENT AGREEMENT
 CANNOT BE ENFORCED AND MUST BE SET ASIDE
 BECAUSE THE SAME WAS BOURNE OF DURESS AND/OR
 IS UNCONSCIONABLE.

 POINT THREE

 TRIAL COURT ERRED IN FAILING TO FIND THAT
 PLAINTIFF HAD A PRIMA FACIE SHOWING OF CHANGED
 CIRCUMSTANCES WARRANTING A REVIEW OF ALIMONY
 AND CHILD SUPPORT.

 POINT FOUR

 THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR
 ABUSED ITS DISCRETION BY DECIDING THIS MATTER
 ON THE BASIS OF CONFLICTING FACTUAL
 CERTIFICATIONS; RATHER, THE COURT SHOULD HAVE
 CONDUCTED A PLENARY HEARING.

 We have considered plaintiff's arguments in light of the

record and applicable law, and are not persuaded by any of them.

We affirm substantially for the reasons expressed by Judge

Christopher D. Rafano in his well-reasoned statement of reasons

attached to the May 28, 2015 order. We add the following comments.

 "[W]hile settlement is an encouraged mode of resolving cases

generally, 'the use of consensual agreements to resolve marital

controversies' is particularly favored in divorce matters."

Weishaus v. Weishaus, 180 N.J. 131, 143 (2004) (quoting Konzelman

v. Konzelman, 158 N.J. 185, 193 (1999)). Spousal agreements "are

 8 A-4643-14T3
essentially consensual and voluntary in character and therefore

entitled to considerable weight with respect to their validity and

enforceability notwithstanding the fact that such an agreement has

been incorporated in a judgment of divorce." Petersen v. Petersen,

85 N.J. 638, 642 (1981). "For these reasons, 'fair and definitive

arrangements arrived at by mutual consent should not be

unnecessarily or lightly disturbed.'" Konzelman, supra, 158 N.J.

at 193-94 (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)). "A

settlement agreement will be reformed, however, where a party

demonstrates that the agreement is plagued by 'unconscionablity,

fraud, or overreaching in the negotiations of the settlement.'"

Weishaus, supra, 180 N.J. at 143-44 (quoting Miller v. Miller, 160

N.J. 408, 419 (1999)). Courts have continuing power to oversee

divorce agreements, and the discretion to modify them on a showing

of changed circumstances that render their continued enforcement

unfair, unjust and inequitable. Konzelman, supra, 158 N.J. at 194

(citing Lepis v. Lepis, 83 N.J. 139, 154-55 (1980)).

 Plaintiff contends that his child support and spousal support

obligations were based on an overstated imputed income level.

Plaintiff stipulated to an imputed annual income of $162,500 for

child support purposes, and an imputed income of no less than

$150,000 for purposes of calculating responsibility for the cost

of the children's secondary education. Stipulations serve as a

 9 A-4643-14T3
tool that enables parties to avoid the expense, trouble, and delay

of adducing proofs on facts that, absent a stipulation, are

contestable. Negrotti v. Negrotti, 98 N.J. 428, 432 (1985). As

a general rule, "litigants should be held to their stipulations

and the consequences thereof." Ibid.

 Furthermore, a movant is entitled to a plenary hearing only

where he clearly demonstrates the existence of a genuine issue of

material fact entitling the party to relief through competent

supporting documents and affidavits. Lepis, supra, 83 N.J. at

159; Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004).

 Motions to reopen or set aside a judgment are governed by

Rule 4:50-1, which provides:

 the court may relieve a party or the party's
 legal representative from a final judgment or
 order for the following reasons: (a) mistake,
 inadvertence, surprise, or excusable neglect;
 (b) newly discovered evidence which would
 probably alter the judgment or order and which
 by due diligence could not have been
 discovered in time to move for a new trial
 under R. 4:49; (c) fraud (whether heretofore
 denominated intrinsic or extrinsic),
 misrepresentation, or other misconduct of an
 adverse party; (d) the judgment or order is
 void; (e) the judgment or order has been
 satisfied, released or discharged, or a prior
 judgment or order upon which it is based has
 been reversed or otherwise vacated, or it is
 no longer equitable that the judgment or order
 should have prospective application; or (f)
 any other reason justifying relief from the
 operation of the judgment or order.

 10 A-4643-14T3
"As a general matter, judgments and orders in family actions are

covered by this rule." Pressler & Verniero, Current N.J. Court

Rules, comment 6.1 on R. 4:50-1 (2017). "Regardless of the basis,

vacation of a judgment under Rule 4:50-1 should be granted

sparingly." In re Guardianship of J.N.H., 172 N.J. 440, 473-74

(2002).

 Relief under R. 4:50-1(f) "is available only when truly

exceptional circumstances are present and only when the court is

presented with a reason not included among any of the reasons

subject to the one year limitation." Baumann v. Marinaro, 95 N.J.

380, 395 (1984). "Whether exceptional circumstances exist is

determined on a case-by-case basis according to the specific facts

presented." J.N.H., supra, 172 N.J. at 474. The movant must

demonstrate that continued enforcement of the judgment would be

"unjust, oppressive or inequitable." Quagliato v. Bodner, 115

N.J. Super. 133, 138 (App. Div. 1971). Plaintiff has not met this

burden.

 Rule 4:50-1 motions "shall be made within a reasonable time,

and for reasons (a), (b) and (c) of R. 4:50-1 not more than one

year after the judgment, order or proceeding was entered or taken."

R. 4:50-2. In Rogan Equities, Inc. v. Santini, 289 N.J. Super.

95, 112-13 (App. Div.), certif. denied, 145 N.J. 375 (1996), the

defendant sought to attack a final judgment of foreclosure on the

 11 A-4643-14T3
ground that she had not been properly served. However, the

defendant had actual knowledge of the action but delayed more than

two years before asserting that the judgment and the ensuing

sheriff's sale were void. Ibid. The trial court held that the

defendant's motion to set aside the judgment had not been made

within a reasonable time, as required by R. 4:50-2. Id. at 113.

We affirmed the ruling, holding "in some circumstances a motion

to vacate a void judgment can properly be denied as untimely."

Id. at 114. See also Last v. Audubon Park Assocs., 227 N.J. Super.

602, 607-08 (App. Div. 1988), certif. denied, 114 N.J. 491 (1989)

(rejecting a mortgagee's attempt to void a foreclosure judgment

that had been delayed for two years despite having knowledge of

the judgment).

 Plaintiff was aware of the facts and circumstances upon which

he relies in support of his motion at the time they occurred in

2012. He was aware of his treatment by the trial judge, his

arrest, his appearance in court for a portion of the trial and the

negotiation of the MSA while in handcuffs, and his income level.

The financial information and records needed to prove his actual

income level or an appropriate imputed income, and to value his

business, were readily available to him during the pendency of the

divorce. Despite these circumstances, plaintiff offers no

explanation or excuse for filing his motion more than twenty-six

 12 A-4643-14T3
months after executing the MSA and the entry of the final judgment

of divorce. By any measure, plaintiff did not file his motion

within a reasonable time. Consequently, his application is time-

barred. R. 4:50-2.

 We discern no abuse of discretion by Judge Rafano in ruling

on plaintiff's motion without a plenary hearing and in denying the

motion as both time-barred and without merit. See Eaton, supra,

368 N.J. Super. at 222 (noting that a "trial judge's decision

whether to allow or deny such relief on one of the six specified

grounds in Rule 4:50-1 should be left undisturbed unless it results

from a clear abuse of discretion"); see also Schwartzman v.

Schwartzman, 248 N.J. Super. 73, 77-78 (App. Div.), certif. denied,

126 N.J. 341 (1991).

 The divorce proceeding was fully contested, with extensive

pretrial motion practice and two days of trial before the

settlement was reached. Both parties were represented by

experienced counsel throughout the proceedings. Plaintiff is a

highly educated, sophisticated businessman who owns an information

technology company. He was financially capable of retaining a

forensic accountant while the divorce action was pending. As

noted by Judge Rafano:

 He could have hired an expert, provided that
 expert with all of the necessary information
 to prepare a report, and presented the

 13 A-4643-14T3
 expert's valuation in Court or used the
 expert's valuation as a base for negotiations
 with the Defendant. Instead, despite having
 clear warning that the Defendant intended to
 hire an expert, the Plaintiff made a tactical
 decision to call his accountant instead. He
 cannot now decide that he would like to go
 back and litigate his case in a different
 fashion because he is unhappy with the
 results.

 Plaintiff was not ill or under the influence of intoxicants

during the trial or the negotiation of the settlement agreement.

Defendant did not conceal or fraudulently transfer marital assets.

Nor did she fail to disclose her income.

 Defendant did not subject plaintiff to duress, coercion or

threats. As further noted by Judge Rafano:

 The Defendant had no say in whether a warrant
 was issued for Defendant's arrest and no
 control over whether he was released. If,
 after consulting with counsel, the Plaintiff
 had felt he was unable to proceed or felt that
 his incarceration was preventing him from
 thinking calmly and clearly about the
 situation, he could have requested an
 adjournment of the trial until he was
 released. However, the transcripts do not
 indicate that such a request was made. In
 fact, both parties agree that the Plaintiff
 instead called a friend to come to the court
 to help him evaluate the settlement proposals
 and that he spent several hours, with the
 benefit of the advice of his friend and
 counsel negotiating the terms of the Marital
 Settlement Agreement.

 In addition, several other factors militate strongly against

plaintiff's position. Plaintiff did not seek an adjournment of

 14 A-4643-14T3
the trial on the day he was arrested or the following day when the

MSA was negotiated and agreed upon. He does not claim that his

counsel was ineffective. He waited more than twenty-six months

to file his motion to set aside the MSA. He offers no explanation

or excuse for the delay. Plaintiff is bound by his imputed income

stipulation. Negrotti, supra, 98 N.J. at 432.

 Moreover, both plaintiff and defendant filed post-judgment

motions to enforce various aspects of the MSA during the

intervening two years. As also noted by the motion judge:

 The Plaintiff cannot pick and choose which
 portions of the Agreement he wishes to follow
 and to have the Court hold the Defendant
 responsible for, while arguing that his
 financial responsibilities should be abated
 because his incarceration made it impossible
 for him to consent to the Agreement freely.
 In addition it is disingenuous for the
 Plaintiff to abide by and seek to enforce the
 terms of the parties' Marital Settlement
 Agreement for the almost two and a half years
 since the parties' divorce and then return to
 Court seeking to have a portion of the
 Agreement vacated because he has decided to
 now present evidence that was available to him
 at the time of the trial.

 "It is well recognized that a litigant who accepts the

benefits of a judgment is estopped from attacking it on appeal."

Tassie v. Tassie, 140 N.J. Super. 517, 524 (App. Div. 1976). The

rule is but a corollary to the established principle that any act

of a litigant "by which he expressly or impliedly recognizes the

 15 A-4643-14T3
validity of a judgment operates as a waiver or surrender of his

right to appeal therefrom." Id. at 525. Plaintiff benefitted

from various aspects of the MSA incorporated into the final

judgment of divorce during the years following its entry. He

filed motions to enforce the terms of the MSA.

 Plaintiff was represented by an experienced attorney in the

negotiation of the settlement agreement as well as advised by an

accountant. He understood the terms of the agreement. There are

no substantiated allegations of fraud, unconscionablity or

overreaching in the negotiations of the MSA. Given the absence

of such circumstances, we agree with the motion judge that there

is no legal or equitable basis to set aside the parties' settlement

agreement. See Miller, supra, 160 N.J. at 419. Judge Rafano

correctly denied plaintiff's motion without conducting a plenary

hearing.

 Although we decline to set aside the MSA, we must nonetheless

determine whether plaintiff made a sufficient showing to warrant

a plenary hearing before deciding his application to reduce his

child support obligation based on changed circumstances. Support

provisions contained in settlement agreements or judicial orders

are subject to the same standard of judicial modification based

on substantially changed circumstances. See generally Lepis,

supra, 83 N.J. 147-48; Smith, supra, 72 N.J. at 360.

 16 A-4643-14T3
 An increase in support becomes necessary
 whenever changed circumstances substantially
 impair the dependent spouse's ability to
 maintain the standard of living reflected in
 the original decree or agreement. Conversely,
 a decrease is called for when circumstances
 render all or a portion of support received
 unnecessary for maintaining that standard.

 [Lepis, supra, 83 N.J. at 152-53.]

 Plaintiff contends that he made out a prima facie case for a

reduction in his support obligations. He argues that his motion

should not have been decided based on conflicting affidavits

without a plenary hearing.

 Judge Rafano determined that plaintiff failed to make a prima

facie showing of changed circumstances sufficient to warrant a

modification of the support obligations imposed by the MSA. He

further determined that a plenary hearing was not necessary. The

judge explained:

 Although the Plaintiff briefly states that
 "the IT business is not what it used to be
 just a few years ago and many of my former
 clients have outsourced their business" he
 does not substantiate these claims and seems
 to rest the remainder of his certification and
 his attorney's legal arguments on the idea
 that the Court should reevaluate his financial
 circumstances as they existed at the time of
 the divorce. Therefore, since he bases his
 motion on events that existed at the time of
 the parties' divorce, he has not shown a
 change in circumstances and therefore has not
 sufficiently demonstrated to the Court that a
 plenary hearing is necessary to resolve a
 dispute of material facts.

 17 A-4643-14T3
 We agree. Plaintiff did not make a prima facie showing of

changed circumstances following the entry of the final judgment

of divorce. A plenary hearing was not required.

 The trial judge's and the motion judge's findings are amply

supported by the record. The denial of plaintiff's motion without

conducting a plenary hearing was appropriate.

 Affirmed.

 18 A-4643-14T3