**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3815-15T3

MAUREEN GREENFELD,

    Plaintiff-Appellant,

v.

B.C.T. IMPORTS, INC.,
d/b/a TOYOTA UNIVERSE, INC.,
and BOB CIASULLI AUTO GROUP,
INC.,

    Defendants-Respondents,

and

CHRISTIAN SEMPRIVIVO,

    Defendant.

_____

Argued March 15, 2018 — Decided June 25, 2018

Before Judges Simonelli, Haas and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Passaic County, Docket No. L-
1826-13.

Ronald L. Lueddeke argued the cause for
appellant (Lueddeke Law Firm, attorneys;
Ronald L. Lueddeke and Karri Lueddeke, on the
brief).

Resa T. Drasin argued the cause for respondents (Woehling Law Firm, PC, attorneys; Resa T. Drasin, on the brief).

PER CURIAM

Plaintiff, Maureen Greenfeld, appeals from a final judgment dismissing her complaint that the trial judge entered after a jury unanimously found in favor of defendants, B.C.T. Imports, Inc., d/b/a Toyota Universe, Inc., (Toyota Universe), and Bob Ciasulli Auto Group, Inc.[1] Plaintiff, a former employee of Toyota Universe, sued defendants under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42, and for violations of New Jersey's Wage and Hour Law, N.J.S.A. 34:11-56a to -56a38. Plaintiff filed suit against Toyota Universe when it terminated her employment after she filed wage and hour and discrimination claims with the New Jersey Department of Labor (NJDOL), the United States Department of Labor (USDOL), and the Equal Employment Opportunity Commission (EEOC).

Plaintiff's arguments on appeal focus upon rulings made by the trial judge barring the admission into evidence of an audit file from the NJDOL that she claims the parties had agreed pre-trial to admit into evidence. She also challenges the judge's sua

---

[1] Plaintiff voluntarily dismissed her complaint against defendant Christian Semprivivo.

sponte decision to charge the jury with an allegedly unwarranted curative instruction in response to comments made by her attorney during his closing argument, and the judge's denial of plaintiff's motion for a new trial. For the reasons stated herein, we vacate the judgment entered in favor of defendants and remand the matter for a new trial.

The facts adduced at trial are summarized as follows. Plaintiff was hired by Toyota Universe as its payroll administrator in June 2002 and was paid a $620 weekly salary. She briefly left to work at another company, but was rehired in October 2005 at a weekly salary of $700 and promised an increase to $750 per week after three months. At the time Toyota Universe rehired her, a note on her payroll change notice stated that "[plaintiff] is [a] very professional[,] organized individual" and that "she is an asset to [the] company." Despite her favorable evaluation, she was never paid the increase promised after three months and, in fact, her salary was decreased at one point due to cutbacks. By 2006 her salary was increased to $775 per week, which was her salary upon her termination in August 2012. During her years of employment, plaintiff was never paid for working overtime.

On April 9, 2012, plaintiff sent a letter to her supervisor, Patricia Kornfeld, stating that she had not been given a raise since April 2006, and that she had worked more than her required

hours in the first eight weeks of 2012, but had not received overtime pay. Kornfeld consulted with the company's general manager Semprivivo, and plaintiff was given a $20 per week increase — a total of $795 per week — effective the first payroll of June 2012. According to Kornfeld, when she told plaintiff about the raise, plaintiff responded, "that's it?" The conversation concluded with Kornfeld giving plaintiff payroll forms for two other employees who were clerks in the same department, since plaintiff was the payroll administrator.

Plaintiff was "immediately agitated" when she saw that she received a lower raise than the other employees, who were younger than her. According to defendants, the two employees received raises based on promotions, which Toyota Universe had not given to plaintiff. On June 8, 2012, plaintiff and Semprivivo met to discuss plaintiff's dissatisfaction with her raise. The parties disputed what occurred at that meeting, specifically whether plaintiff asked to be fired so she could collect unemployment. It was undisputed, however, that Semprivivo told her that she was "maxed out, top of the scale, [so] why not retire[,]" and offered her the possibility of moving into new positions that would pay more, which plaintiff rejected. According to plaintiff, she was not told during this meeting that she would be fired. Toyota Universe asserts that the decision to terminate plaintiff was made

4

after plaintiff asked Semprivivo to fire her during the June 8 meeting.

On June 9, 2012, plaintiff sent letters to the NJDOL,[2] the USDOL, and the EEOC, alleging that Toyota Universe was in violation of numerous labor laws, including non-payment of overtime for certain employees, improper payroll deductions, age discrimination, hostile workplace environment, and disparate treatment. Plaintiff claimed she became concerned in January 2012 about her classification as an exempt employee when she reviewed a newsletter from the company's payroll service on that topic. However, plaintiff admitted that she would not have sent the letters had she been given the raise that she wanted.

According to plaintiff, shortly after filing her complaints, she received a phone call from Daniel Pope, a representative from the NJDOL. After the NJDOL sent a notice of audit on June 14, 2012, Pope visited the dealership on June 25, 2012, to conduct an audit. Plaintiff was not aware if her employer knew she had filed complaints with the NJDOL. In anticipation of Pope's visit,

---

[2]  Plaintiff later withdrew her complaint with the NJDOL in order to pursue the underlying action in the Law Division.

Kornfeld had plaintiff put the necessary payroll records together for Pope's review.[3]

After the audit, the NJDOL issued to Toyota Universe a notice of alleged violations. In response, Toyota Universe created job classifications for the subject employees, including plaintiff, which described them as exempt employees not entitled to overtime pay.

Plaintiff stated that she was misclassified as an exempt employee as she was not employed in an administrative capacity and did not exercise "independent judgment[.]" As a result, plaintiff believed that if she was properly classified, she would have received nearly $5800 in overtime pay because she was not an exempt employee. Plaintiff never discussed being misclassified with her employer before contacting the NJDOL.

---

[3] As discussed infra, although not disclosed to the jury, the audit files revealed that the NJDOL made a determination that Toyota Universe had not paid overtime to a few employees who were eligible. In response to its findings, Toyota Universe created job descriptions for various positions, including plaintiff's, and explained to the NJDOL why the employees working in those positions were not entitled to overtime pay. The NJDOL amended its findings, cited Toyota Universe for limited violations, and entered into an agreement with Toyota Universe that required certain payments to a few employees, including plaintiff who was entitled to approximately $3700. According to the agreement signed by Toyota Universe and the NJDOL, the finding would be the basis for a prior offense if Toyota violated the wage and hour laws in the future.

Prior to the audit, on June 15, 2012, Semprivivo called plaintiff into his office to discuss plaintiff's continued employment. According to plaintiff, he told her "that he was prepared to give [her] what [she] wanted and [when she] questioned [what] that [was,] he said [they] will terminate [her] as long as [she] sign[ed] a waiver of voluntary separation[, to which plaintiff] said absolutely not." Plaintiff never signed a waiver of any claim.

Semprivivo stated that at the June 15 meeting, plaintiff "changed her mind" and wanted to stay, but he decided to let her go anyway. After the meeting, he spoke with Kornfeld and when he told her he was terminating plaintiff, she asked him to delay plaintiff's termination until August due to staffing concerns. According to Semprivivo, the decision to terminate plaintiff was made on June 15, but her termination was delayed per Kornfeld's request. At the time the decision was made to fire plaintiff, Toyota Universe was not aware that she had filed claims with the three agencies. During the remainder of June, there were no further discussions with plaintiff, nor was there any communication between Toyota Universe and the agencies plaintiff had contacted until the notification it received about the audit.

In early July 2012, Toyota Universe received a notification from the EEOC advising it of the agency's receipt of plaintiff's

complaint. Upon Toyota Universe's receipt of the notice, Kornfeld confronted plaintiff asking her what it was about, and less than one month later, on August 8, 2012, Kornfeld signed a termination report for plaintiff, officially terminating plaintiff on August 15, 2012. Toyota Universe contends that since the decision to fire plaintiff was made in early June 2012 — before the audit was conducted and letters from the labor agencies arrived at the dealership — her termination was not a result of her alleged whistle-blowing activity. This is because no one at Toyota Universe knew that plaintiff filed the complaints when she did, and it had already made the decision to terminate her employment in June. Rather, Semprivivo testified that he terminated plaintiff because of her "unhappiness with financials[,]" her "not getting along with anybody[, a]nd due" to a negative experience Semprivivo previously had with a disgruntled employee while he was employed by another car dealership across the street. However, plaintiff had no idea what that incident at the other dealership was about, and it was also undisputed that she had no involvement with the other dealership.

After considering the evidence, the jury returned a verdict of no cause, finding that plaintiff was not terminated because of her age or because she filed complaints with the government agencies. It also found that defendants proved that plaintiff

"was employed in a bona fide administrative capacity and therefore exempt from overtime pay[.]" Based on the jury's verdict, the trial judge entered judgment dismissing the complaint. Plaintiff filed a motion for new trial, which the judge denied. This appeal followed.

We first address plaintiff's challenge to the curative instruction that the trial judge gave to the jury in response to comments her counsel made about the NJDOL's amended notice of alleged violations, one of the two documents from the audit file that the judge admitted into evidence.

During his summation, counsel stated that the document:

> seals the deal on the reasonable belief as to Wage and Hour because the [NJDOL] themselves found notices of violations. So, she believed them, they believed them, . . . they did the audit. They confirmed all her numbers and they issued a notice of alleged violation. So, it went from reasonable belief to . . . a notice of allegation.

After plaintiff's closing argument, without any objection by defendants' attorney, the judge called both counsel into chambers to discuss plaintiff's counsel's reference to the NJDOL having "confirmed all of [plaintiff's] numbers." In response to the judge pointing out to counsel that the amended notice of alleged violations was not a determination and was not evidence indicating that the NJDOL believed plaintiff, plaintiff's counsel

acknowledged that the judge was correct and apologized for the misstatement. The judge determined that a curative instruction was necessary even though the defense did not raise an objection during closing arguments. Plaintiff's counsel did not object to the judge making a curative instruction.

After the break, without any input from counsel, the judge instructed the jury:

> [T]here's just one thing I do want to clarify. There was a comment that was made in plaintiff['] summation referencing [the amended notice of alleged violations] which came from [the NJDOL]. It had to deal with the . . . Wage and Hour claim, and the comment was something to the effect that you know, that the [NJDOL] believed that particular allegation or complaint being made by the plaintiff, and that's really inaccurate. That document does not indicate any determination or belief on the part of the [NJDOL]. It's a mere allegation. What [the NJDOL is] simply doing is indicating that there is now an allegation. There is no determination of the accuracy of that and it should not be viewed in that sense. It's merely an allegation. It is not a determination of the correctness of the allegation. It is not a belief in the accuracy of the allegation. It is not a confirmation of the numbers. It is an allegation. An allegation means a charge.

Plaintiff argues that the judge's instruction was improper because had the entire audit file been admitted, it would have established that her attorney's comment was correct. We disagree.

We conclude that plaintiff's contention is "without sufficient merit to warrant discussion in a written opinion[.]" R. 2:11-3(e)(1)(E). Suffice it to say, plaintiff's counsel's summation should have been limited to comments about only admitted evidence. "Comments during summation . . . should be centered on the truth and counsel should not 'misstate the evidence nor distort the factual picture.'" Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 128 (2008) (quoting Bender v. Adelson, 187 N.J. 411, 431 (2006)). Here, the judge properly identified an undisputed improper characterization of the evidence and issued a proper curative instruction. See State v. Vallejo, 198 N.J. 122, 134 (2009); State v. Winter, 96 N.J. 640, 647 (1984). The amended notice of alleged violations clearly was not as counsel stated, a confirmation that plaintiff was correct, and as counsel acknowledged, he should not have led the jury to believe otherwise.

We turn next to plaintiff's argument challenging the trial judge's exclusion of the remaining documents in the NJDOL's audit file, which had been produced by defendants in discovery, but were barred sua sponte by the judge, despite the parties' alleged pre-trial stipulation to its admission. Plaintiff attempted to proffer the audit file to prove that she had a reasonable belief that

Toyota Universe acted unlawfully as required by CEPA,[4] by misclassifying her position and failing to pay her overtime. The trial judge barred the evidence after he concluded that it was unduly prejudicial, and that plaintiff waived the right to contest issues within the audit file — i.e. the amount of overtime pay owed to her, if any - when she commenced the lawsuit instead of appealing through the NJDOL. The judge stated that admitting the documents would require "a trial within a trial" as to the accuracy of the NJDOL's ultimate conclusions. Apparently, the judge was concerned that the file would permit the jury to rely upon the NJDOL's findings as to plaintiff's claims rather than the evidence presented at trial.

The judge excluded almost the entire audit file despite the fact that defendants never objected to its admission. As already noted, he only allowed two documents from the file: the notice of audit and the amended notice of alleged violations. He did not allow any documents indicating the NJDOL's final determinations as to whether defendants violated any wage and hour laws or

---

[4] As explained in more detail infra, CEPA bars an employer from "retaliatory action against an employee because the employee" objects to participating in "any activity . . . which the employee reasonably believes[] is in violation of a law . . . ." N.J.S.A. 34:19-3(c)(1).

regulations. Plaintiff contends on appeal that the exclusion of the evidence was improper. We agree.

Our review of a trial judge's evidential rulings is "limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (citing Brenman v. Demello, 191 N.J. 18, 31 (2007)). "When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). Therefore, "we will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'" Ibid. (citations omitted). The "substantial deference [owed] to a trial court's evidentiary rulings[,]" Benevenga v. Digregorio, 325 N.J. Super. 27, 32 (App. Div. 1999) (quoting State v. Morton, 155 N.J. 383, 453 (1998)), includes those "determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (citing State v. Carter, 91 N.J. 86, 106 (1982)).

At the outset, we reject plaintiff's contention that if parties to a litigation stipulated to certain evidence, a trial

judge is prevented from exercising his or her obligations as "gatekeeper" and excluding the proffered evidence. While N.J.R.E. 101(a)(4) provides that if "no bona fide dispute between the parties [exists] as to a relevant fact, the judge may permit that fact to be established by stipulation or binding admission[,]" in civil actions, the proffered evidence is still subject to exclusion under N.J.R.E. 403. However, a party losing the benefit of stipulated evidence must still receive his or her day in court with respect to the stipulated issue. "[T]he litigant who is being prejudiced by the court's non-adherence to the stipulation [should] be given the same opportunity to present his[ or her] proofs as he[ or she] would have received had the stipulation not been entered on the record." Negrotti v. Negrotti, 98 N.J. 428, 433 (1985).

Here, plaintiff attempted to introduce the audit file through a stipulation to show that she "reasonably believed" that defendants were violating the wage and hour laws and to prove causation between plaintiff's whistle-blowing activity and her termination. Because of the alleged stipulation, plaintiff did not call Pope as a witness. When the trial judge objected to the documents being admitted, defendants disputed that a stipulation existed and argued plaintiff mischaracterized the parties'

agreement.  They claimed they never stipulated to the admission of the documents "for the truth of the matter asserted therein."

We need not resolve the dispute about whether there was a stipulation as we conclude that even if defendants had agreed to the audit file's admission, the trial judge was not obligated to enter it into evidence if he properly determined that it was otherwise inadmissible.  Having reached that conclusion, we address whether the trial judge abused his discretion by refusing to admit the proffered documents.

Plaintiff argues that the trial judge erred in excluding the balance of the audit file because it was relevant to the first and fourth prongs of her CEPA claim and not unduly prejudicial.  We must consider her argument in light of the legislative intent behind CEPA and plaintiff's burden of proof.

"[T]he legislative purpose animating CEPA is . . . to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'"  Lippman v. Ethicon, Inc., 222 N.J. 362, 378 (2015) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)).  Because it is remedial legislation, courts are to construe the statute "liberally to achieve its remedial purpose."  Barratt v. Cushman

& Wakefield of N.J., Inc., 144 N.J. 120, 127 (1996) (citing Abbamont, 138 N.J. at 431).

In pertinent part, the statute provides:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> . . . .
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity . . . .
>
> [N.J.S.A. 34:19-3(c)(1) to (2).]

Prohibited retaliatory action includes an employee's suspension from or termination of his or her employment. N.J.S.A. 34:19-2(e); Donelson v. DuPont Chambers Works, 412 N.J. Super. 17, 29 (App. Div. 2010), rev'd on other grounds, 206 N.J. 243 (2011).

To establish a CEPA violation, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in [N.J.S.A.] 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Lippman, 222 N.J. at 380 (citations omitted).]

A plaintiff who brings a CEPA claim is not required to show that his or her employer's conduct was actually fraudulent. See Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). Rather, "the plaintiff simply must show that he or she 'reasonably believes that to be the case.'" Ibid. (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000)).

Determining whether the audit file should have been admitted depends first upon whether it was relevant to plaintiff meeting the requirements for proving her CEPA claim. "Our analysis of the trial [judge]'s evidentiary ruling begins with the question of relevancy, 'the hallmark of admissibility of evidence.'" Griffin, 225 N.J. at 413 (quoting State v. Darby, 174 N.J. 509, 519 (2002)).

17

Relevant evidence is defined as evidence that has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Ibid. (quoting N.J.R.E. 401).

Here, neither defendants nor the trial judge ever challenged the relevancy of the audit files or their admissibility as business records.[5] We agree that the file's relevancy was established by its "logical connection between the proffered evidence and a fact in issue[,]" ibid. (alteration in original) (quoting Green, 160 N.J. at 492), specifically whether plaintiff reasonably believed her employer engaged in fraudulent wrongful labor practices and whether she was terminated for reporting Toyota Universe's practices. However, even where there is some logical relevancy, the judge must rely on his or her "own experience, his [or her] general knowledge, and his [or her] understanding of human conduct and motivation" before admitting evidence. State v. Allison, 208 N.J. Super. 9, 17 (App. Div. 1985) (citation omitted). "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403; see also Griffin, 225 N.J. at 420.

---

[5] See N.J.R.E. 803(c)(6).

We consider, therefore, the judge's determination that the evidence was unduly prejudicial, warranting its exclusion under N.J.R.E. 403. The burden is on "[t]he party seeking the exclusion of the evidence [to] demonstrate that one or more of the factors listed in N.J.R.E. 403 substantially outweighs the probative value of the evidence." Griffin, 225 N.J. at 420 (citations omitted). In general, "[e]vidence claimed to be unduly prejudicial is excluded only when its 'probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." Id. at 421 (alteration in original) (citations omitted). "[W]hen a party challenges the admission of evidence under N.J.R.E. 403, the question is not whether the challenged testimony will be prejudicial to the objecting party, 'but whether it will be unfairly so.'" Ibid. (emphasis added) (citations omitted). "[E]vidence that has overwhelming probative worth may [still] be admitted even if highly prejudicial." Rosenblit v. Zimmerman, 166 N.J. 391, 410 (2001) (quoting Green, 160 N.J. at 496).

A finding that probative evidence is prejudicial does not necessarily warrant exclusion if a limiting instruction under

N.J.R.E. 105[6] would minimize its potential undue prejudice, and address a court's concern about confusing a jury. See State v. Cole, 229 N.J. 430, 455 (2017) ("[T]otal exclusion of evidence is error where prejudice can be minimized through limiting instructions or other means[.]" (citing Ocasio v. Amtrak, 299 N.J. Super. 139, 159-60 (App. Div. 1997))).

Here, the trial judge did not consider any limiting instruction and excluded the file, because "to put the entire content of the audit file[], before this jury, would . . . have unduly confused the issues, [and] would have been extremely prejudicial." He reached that conclusion without ever discussing how probative the audit file was to plaintiff's claim and whether, despite its probative value, it remained "undu[ly] prejudice[ial]," as contemplated by N.J.R.E. 403, so as to warrant exclusion, rather than admission subject to a limiting instruction. The audit file was clearly prejudicial as it

---

[6]  The Rule provides:

> When evidence is admitted as to one party or
> for one purpose but is not admissible as to
> another party or for another purpose, the
> judge, upon request, shall restrict the
> evidence to its proper scope and shall
> instruct the jury accordingly, but may permit
> a party to waive a limiting instruction.

[N.J.R.E. 105.]

supported plaintiff's claim that she had a reasonable belief that Toyota Universe was violating labor laws or regulations, but without weighing the audit file's probative value against its prejudicial effect, the trial judge mistakenly exercised his discretion in excluding it based solely on its prejudicial nature.

Because the trial judge improperly barred the admission of the balance of the audit file, we conclude that he erred in denying plaintiff's motion for a new trial under Rule 4:49-1. The judge denied this motion stating that plaintiff had "enough evidence" to prove her claims, and reiterated that his exclusion of the audit file was because it was unduly prejudicial and would confuse the jury. He reasoned that he did not "know why the jury rendered the verdict that it did" but that "there was certainly enough" evidence for the jury to make its determination.

Rule 4:49-1(a) provides that a trial court shall grant a new trial if, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." "A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest

denial of justice.'" Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)); Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005) ("Jury verdicts should be set aside in favor of new trials only with great reluctance, and only in cases of clear injustice." (citing Crego v. Carp, 295 N.J. Super. 565, 577 (App. Div. 1996))). Furthermore, on a motion for a new trial, and on appeal from same, "all reasonable inferences must be drawn in favor of upholding the" jury's decision, and all evidence supporting that decision must be accepted as true. Boryszewski, 380 N.J. Super. at 391 (citing Harper-Lawrence, Inc. v. United Merchs. & Mfrs., Inc., 261 N.J. Super. 554, 559 (App. Div. 1993)).

In reviewing a trial court's decision on a motion for a new trial, we "afford 'due deference' to the trial court's 'feel of the case,' with regard to the assessment of intangibles, such as witness credibility." Jastram v. Kruse, 197 N.J. 216, 230 (2008) (quoting Feldman v. Lederle Labs., 97 N.J. 429, 463 (1984)). We will, however, reverse a trial judge's denial of a motion for new trial where "it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1.

Guided by these principles, we cannot conclude that here plaintiff received a fair trial in light of the judge's mistaken exclusion of the audit file, which would have established an

element of plaintiff's CEPA claim. We are therefore constrained to reverse the denial of plaintiff's motion for a new trial, vacate the judgment dismissing plaintiff's complaint and remand for a new trial.

Reversed in part, vacated in part and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION