**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3067-16T3

G.F.,

     Petitioner-Appellant,

v.


DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES and BERGEN
COUNTY BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

Submitted September 12, 2018 – Decided September 17, 2018

Before Judges Haas and Mitterhoff.

On appeal from the New Jersey Division of Medical Assistance and Health Services, Department of Human Services.

Amy S. MacIsaac, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney General, of counsel; Mark D. McNally, Deputy Attorney General, on the brief).

PER CURIAM

Appellant G.F. appeals from the February 3, 2017 final decision of the Director of the Division of Medical Assistance and Health Services (DMAHS) denying her request for a deduction from her post-Medicaid eligibility income for the cost of 24-hour per day companion care services. Because there was confusion as to the proper scope of the proceedings to be conducted at the Office of Administrative Law (OAL) between the parties and the Administrative Law Judge (ALJ) on the one hand, and the Director on the other, we vacate the Director's decision and remand for a contested case hearing on all the issues presented in this matter.

By way of background, Medicaid recipients who are receiving care in an institution, such as a medical institution or nursing facility, are generally required to contribute all of their income to the cost of their care. See 42 U.S.C. § 1396a(q). Thus, the recipient must turn over their income on a monthly basis as a cost share to the facility where the recipient resides. Ibid.

In appropriate circumstances, however, State Medicaid agencies like DMAHS must allow a recipient to deduct certain expenses designated in the agency's regulations from their income before that income is turned over to the care provider. 42 C.F.R. § 435.725(a). Pertinent to the present case, 42 C.F.R.

§ 435.725(c)(4)(ii) provides that "the agency must deduct . . . from the individual's total income . . . [n]ecessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses." Consistent with this federal regulation, DMAHS adopted N.J.A.C. 10:71-5.7(k)(1) which, in relevant part, states that a Medicaid recipient may deduct "necessary medical expenses as recognized by [DMAHS] and incurred during . . . a period of eligibility" from their income before the application of that income to the cost of his or her care.

Turning to the present case, G.F. is a Medicaid recipient, who receives care in an assisted living facility. Through her family, G.F. asserted she suffered from dementia, which made her susceptible to falling. As a result, she was paying $160 per day to have a companion care provider stay with her in the facility to assist with her physical needs. G.F. argued that these expenses were medically necessary under N.J.A.C. 10:71-5.7(k)(1) and, therefore, should be deducted from her income[1] that would otherwise have to be turned over to the facility.

---

[1] G.F. received her income from an Irrevocable Income Trust.

A-3067-16T3

G.F. submitted her request for this deduction to the Bergen County Board of Social Services, which was her county welfare agency (CWA). The CWA denied the request, and G.F., through her attorney, asked for a hearing before the OAL to contest this determination.

In preparation for the hearing, the ALJ proactively asked G.F. and the CWA to provide him with their respective positions on the factual and legal issues involved in the case. In response, the CWA submitted a letter in which it expressed the following rationale for its denial of G.F.'s request for a deduction of the cost of her companion care services:

> Medicaid provides the necessary services depend[ing] on [G.F.'s] level of care. [If G.F.] needs extra health care aide services while he/she [sic] is residing at an Assisted Living facility then [G.F.] needs to be moved to a nursing home facility. For this reason, we completely disagree with [G.F.] because it is a duplication of benefits.

Notably, the CWA did not assert that the companion care services G.F. was paying for were medically unnecessary. Instead, it argued that if G.F. needed those services, her assisted living facility should be providing them and, if the facility was not doing so, G.F. should be transferred to a nursing home where she could receive a higher level of care.

A-3067-16T3

The ALJ scheduled a hearing for July 28, 2016. Prior to the start of the hearing, the ALJ held a conference with the CWA representative and G.F.'s attorney. Unfortunately, that conference was not conducted on the record and, therefore, we are not certain as to the full nature of the matters discussed and agreed upon by the parties. At the conclusion of the conference, however, the ALJ stated on the record that the sole issue before him appeared to be legal in nature, and he framed that issue in the following terms:

> When a patient is in an assisted living facility and due to her specific needs (here, a history of falls), she hires a 24-hour per day companion to assist her with her physical needs (over and above the services provided by the assisted living facility), is the cost of the companion (whose necessity has been verified by the patient's medical doctor) deductible from the patient's income?

The ALJ directed the parties to file briefs addressing this issue and submit any other "relevant documents such as letters from doctors regarding medical necessity or lack of medical necessity of a companion for G.F." The ALJ further stated that if there was no dispute between the parties as to the facts, a hearing would not be necessary and he would simply render his decision on the legal issue on the papers.

Thereafter, G.F.'s attorney submitted an undated letter from G.F.'s physician who had "been in charge of [her] medical care" since her admission

to the assisted living facility. The doctor stated that G.F. had fallen on several occasions at the facility, and the facility's director "agreed that the facility cannot offer . . . the necessary aide coverage to support [G.F.] safely." Therefore, the doctor opined that "the addition of home health aide companion services on a 24/7 basis [w]as a medical necessity."

In its written response, the CWA again did not directly challenge G.F.'s contention that, as a factual matter, the companion services were medically necessary. Instead, the CWA stated its position as follows:

> As her attorney presented at the hearing, [G.F.] may need to have private health care, 24 hours a day, then she is not eligible for Assisted Living assistance. She really needs . . . nursing home care so that she is able to receive appropriate care from a nursing home care facility.

The CWA also argued that deductions for necessary medical expenses were only available under N.J.A.C. 10:71-5.7(k)(1) if the recipient was a patient in a nursing home, rather than an assisted living facility.

Because neither party had identified any factual dispute in the record, the ALJ rendered an Initial Decision without conducting an evidentiary hearing. The ALJ noted that G.F. had produced a letter from her doctor "substantiat[ing]" her claim "that the companion services are medically necessary." The ALJ went on to reject the CWA's position that deductions for such medically necessary

6 A-3067-16T3

services are only available under N.J.A.C. 10:71-5.7(k)(1) for Medicaid recipients residing in nursing homes. Therefore, the ALJ reversed the CWA's decision denying G.F. this deduction from her income.

On February 3, 2017, the DMAHS Director rendered her final written decision, rejected the ALJ's Initial Decision, and denied G.F.'s request for a deduction from her income for the money she paid each month for companion care services. The Director noted that the residuum rule, N.J.A.C. 1:1-15.5(b), requires a litigant to provide "some legally competent evidence" to support their contentions. Here, the Director found that the only evidence G.F. presented to support her argument that the services were medically necessary was an undated letter from her doctor. This letter also contained hearsay statements concerning a conversation the doctor had with the facility director concerning the facility's inability to provide the aide coverage needed to protect G.F. from falling. Because G.F. did not call the doctor or the facility director to testify at the hearing, the Director determined that she failed to establish through any competent evidence that the services were medically necessary under N.J.A.C. 10:71-5.7(k)(1).

For these same reasons, the Director concluded that G.F. did not demonstrate that her assisted living facility was unable to provide sufficient

services to protect her from falling. Even if the facility director's hearsay statement to this effect was accepted, the DMAHS Director held that the facility was required to address this issue and provide the needed services or arrange for G.F.'s transfer to a more appropriate institution.

Thus, the Director reversed the ALJ's Initial Decision because his "finding of medical necessity [was] based on . . . unsupported hearsay testimony[,]" and denied G.F.'s application for a deduction from her income under N.J.A.C. 10:71-5.7(k)(1). This appeal followed.

On appeal, G.F. asserts that neither party disputed that the companion services were medically necessary and were not being provided at her assisted care facility. As a result, she did not provide, and the ALJ did not require, live testimony or other competent evidence to support her claim. Under these unique circumstances, G.F. argues that the Director should have remanded the matter for a new hearing to give her the opportunity to do so. We agree.

Our role in reviewing the decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "[A] 'strong presumption of reasonableness attaches'" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). We will not upset the agency's

determination absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. See Lavezzi v. State, 219 N.J. 163, 171 (2014).

Applying these principles to the idiosyncratic facts of this case, we are constrained to vacate the Director's decision and remand for a new hearing on all issues. In doing so, we agree that the Director properly applied the residuum rule in rendering her decision. The residuum rule provides that "[n]otwithstanding the admissibility of hearsay evidence [in an administrative proceeding], some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness." N.J.A.C. 1:1-15.5(b); see also Weston v. State, 60 N.J. 36, 51 (1972) (holding that "a fact finding or a legal determination cannot be based on hearsay alone").

Here, there was no legally competent evidence to support the ALJ's finding that the companion services were medically necessary because G.F. only submitted an undated letter from her doctor instead of having the doctor testify in support of her claim. In addition, G.F. did not call the director of the assisted living facility to testify, subject to cross-examination by the CWA, concerning that facility's inability to provide G.F. with these services.

A-3067-16T3

In rejecting the ALJ's fact findings, however, the Director failed to consider the fact that the parties agreed, either expressly or implicitly, to permit the ALJ to decide the matter on the basis of their written submissions rather than through a contested case hearing. As noted above, the ALJ determined after the parties' conference that the case presented only a legal issue. In framing the issue, the ALJ implied that the parties had already agreed that the "necessity" of the companion services had "been verified by the patient's medical doctor[.]" Even if that was not the case, however, he gave each side the chance to identify and address any factual issues in their written submissions. In response, the CWA never disputed that 24-hour per day companion care services were warranted, and never objected to G.F.'s doctor's letter on hearsay or any other grounds.

In the absence of any objection or contrary evidence, the ALJ determined that the letter was sufficient to establish that the services were medically necessary under N.J.A.C. 10:71-5.7(k)(1), and proceeded to address the legal issue of whether a Medicaid recipient in an assisted living facility could claim an income deduction for these services. In short, the parties tried the case exactly as contemplated following their unrecorded pretrial conference with the ALJ.

It is well established that the final decision-maker in a case is not bound by a stipulation entered by the parties, and may reject it if not supported by the record or applicable evidence rules. Negrotti v. Negrotti, 98 N.J. 428, 433 (1985). However, it is equally clear that the party "who is being prejudiced by the [tribunal's] non-adherence to the stipulation [should] be given the same opportunity to present his [or her] proofs as he [or she] would have received had the stipulation not been entered on the record." Ibid.

Here, G.F. did not present live testimony to support her claim because the parties agreed there was no need to do so, and the ALJ determined the matter could be decided on the papers. In keeping with the Supreme Court's decision in Negrotti, when the Director thereafter decided that G.F. could not properly rely on her doctor's letter, even though the CWA did not object, she should have remanded the case to the ALJ to permit G.F. to present her proofs at a contested case hearing.

Thus, we vacate the Director's decision and remand the matter for a new hearing on all issues. If the Director determines not to conduct the hearing herself, she should promptly transmit the case to the OAL as a contested case. In doing so, we suggest that the Director specify the factual and legal issues the

11

parties must address at the hearing in order to avoid the confusion that resulted when the parties and the ALJ determined the matter involved only a legal issue.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION